Kinkade, J.
 

 Elizabeth Stanko is the widow and the administratrix of the estate of .her deceased husband, Stephen Stanko. This is an action to recover damages resulting from his wrongful death, alleged to have been caused by the negligence of the plaintiff in error, Dr. Washington L. Jones. The death of one Alexander Thompson, a neighbor of Stanko, was caused by black smallpox. Dr. Jones was the sole attending physician. He was called on Tuesday and saw the patient, Thompson, every day, and sometimes of tener than once a day, until Saturday of the same week, upon which day the patient died. It is alleged, and the evidence tends to sustain the allegation, that Mr. Stanko inquired cf Dr. Jones whether Mr. Thompson was suffering from any contagious disease, and Dr. Jones assured him that Thompson was not suffering from any contagious disease and that he (Stanko) took no risk from contagion by waiting upon Mr. Thompson in
 
 *149
 
 his illness. By reason of these assurances from Dr. Jones, Mr. Stanko not only waited upon Thompson prior to his death, but performed certain services with reference to his preparation for burial after death. The neighbors were in and out, doing what little they could in a friendly way to relieve the suffering of Mr. Thompson, and none of them were conscious of the fact that he was suffering from a disease that was extremely contagious, as well as infectious, to wit, black smallpox. There is no doubt that Thompson had black smallpox, and that he died as a result of that disease. It is not at all in dispute that Dr. Jones failed entirely to announce to any one during the period mentioned that Thompson was suffering from black smallpox or any other contagious disease. It is admitted in the record that Dr. Jones failed entirely to notify the health authorities, as required by statute, of the fact that he was then treating Mr. Thompson for a contagious disease.
 

 Mrs. Stanko brought the action for damages, alleging in detail the facts here briefly stated. As a result of that trial, the. jury brought in a verdict in favor of the defendant, Dr. Jones. Mrs. Stanko prosecuted error to the Court of Appeals, and assigned, among other errors, the refusal of the trial court to give special requests Nos. 11, 12, and 15 to the jury before argument, when so presented by counsel for Mrs. Stanko. The Court of Appeals reversed the judgment of the trial court solely on the refusal to give these three requests. Dr. Jones prosecutes error here.
 

 Bequest ^To. 11 embraced Section 4427 of thé Gen
 
 *150
 
 eral Code, which, requires a practicing physician, when treating a disease dangerous to the public health or required by the board of health to be reported, to report to the health officer, within whose jurisdiction the person is so found, the name, age, sex, and color of the patient, and the house and place in which such person may be found. This request in part was as follows:
 

 “And if you also find from the preponderance of the evidence in this case that said defendant, Washington L. Jones, was the sole physician treating said Alexander Thompson during the sickness from March 17, 1925, to March 21, 1925, inclusive, and that the fact that the said Alexander Thompson was then and there suffering from the disease of smallpox would have been known to a physician possessing the requisite qualifications and applying his skill and judgment with ordinary care and diligence to the diagnosis of the said disease, it was made under such facts, if so found by you, by the provisions of the statute,, just quoted, the duty of the physician in charge of said Alexander Thompson to report said disease to the health officer within whose jurisdiction such person is found, and, if you further find that said defendant failed to comply with said provisions of said statute and that such failure to comply with said provisions of the statute was the proximate cause of the death of the decedent, Stephen Stanko, as by plaintiff alleged in her second amended petition herein,- your verdict must be for the plaintiff. ’ ’
 

 Requests Nos. 12 and 15 relate to the duty of the doctor to discover and to make known the character
 
 *151
 
 of disease that his patient was suffering from. Each of these two requests embraced the same statement in reference to the necessary qualifications of Dr. Jones that appears in request No. 11; that is to say:
 

 “And if you also find from the preponderance of the evidence in this case that said defendant, Washington L. Jones, was the sole physician treating said Alexander Thompson during his sickness from March 17, 1925, to March 21, 1925, inclusive, and that the fact that the said Alexander Thompson was then and there suffering from the disease of smallpox would have been known to a physician possessing the requisite qualifications and applying his skill and judgment with ordinary care and diligence to the diagnosis of the said disease.” -N
 

 It is unnecessary to copy here these requests. The contention of plaintiff in error is that these requests were wrong in speaking of the qualifications of the attending physician in the terms “a 'physician possessing the requisite qualifications,” etc.
 

 It is said that the court should have instructed the jury, in view of the evidence in the case, that Dr. Jones was only required to have the ordinary skill possessed by general practitioners in medicine in the locality of his home, and that he was not required to possess the “requisite qualifications” to diagnose and discover a case of black smallpox such as that with which Thompson died.
 

 There was evidence in the case tending to show that black smallpox can exist and at the same time not furnish very clear manifestations of its existence, and that it might easily be mistaken by a phy
 
 *152
 
 sician of ordinary skill only for some other form of disease, not contagious. There was one witness in the case, conceded to be an expert, who possessed wide experience in smallpox cases, who testified that, if he had not had'the experience that he had, he might, and probably would, have diagnosed Mr. Thompson’s case as something other than black smallpox; but that, with the experience that he had, and notwithstanding the absence in this case of many of the usual manifestations of black .smallpox, he still, by reason of other facts that are not in dispute that did attend this case, would have readily diagnosed it as a case of black smallpox.
 

 The only thing in dispute here is whether Dr. Jones was negligent in not discovering that this was a case of black smallpox, and in failing to give notice thereof to the public health officials and to those who were coming into the presence of Thompson and in contact with him.
 

 We cannot sustain the construction placed by counsel for Dr. Jones upon the requests to charge. The language was not intended to say, and did not say, that Dr. Jones must possess expert skill in diagnosing beyond that possessed by other doctors in general practice in that locality, or such degree of skill as insured accuracy in all cases. Counsel for Dr. Jones claim that this, in effect at least, is what these requests did say, and hence the trial court was correct in refusing to give them.
 

 We think the language used in the requests only referred to the knowledge and skill possessed by physicians in general practice, as distinguished from the knowledge and statements of laymen present, who might venture opinions on the subject with
 
 *153
 
 respect to which no one would be entitled to rely for his own safety. The instruction to the jury was that, in order to find Dr. Jones liable, they must find that he was one holding himself out as a general practitioner of medicine.
 

 The law requires a man who engages in the general practice of the medical profession to be one who has educated himself to take care of the matters incident to such practice, and one of the things that he must be held to know is whether he is dealing with a disease which is dangerously contagious. If it were a defense for such practicing- physician, who had failed to discover and give due notice of the presence of such a disease, to say that he had not theretofore treated a disease of that kind, and had not observed symptoms such as the patient involved manifested, the escape from the provisions of the statute would surely be marvelously easy.
 

 It will be noted that in each one of the requests, after speaking of a physician “possessing the requisite qualifications,” the request gives the degree of care that must be exercised, by stating that it must be ordinary care and skill. A physician is not the insurer of his patient, but his patient has the right to believe that one holding himself out as qualified to practice medicine has the requisite skill to deal with that subject, and, when so dealing, he must exercise ordinary skill and care relative to the matter in hand. It is that, and no more, that is required by these requests Nos. 11,12, and 15, and we quite agree with the Court of Appeals that this language does not present reversible error in this case. Aside from the feature of the requests mentioned — a physician possessing the requisite qualifi
 
 *154
 
 cations — it is not seriously contended that these requests are erroneous. The requests as presented should have been given, and the failure to give them was clearly error prejudicial to the plaintiff in the trial court. The judgment of the Court of Appeals will be affirmed.
 

 Judgment affirmed.
 

 Marshall, C. J., Day, Allen, Robinson, Jones and Matthias, JJ., concur.