**Lena FREESE, Appellant,**

v.

**Norman F. LEMMON et al.,
Appellees.**

**John R. FREESE, Appellant,**

v.

**Norman F. LEMMON et al.,
Appellees.**

**Nos. 55498, 55499.**

Supreme Court of Iowa.

Sept. 19, 1973.

Rehearing Denied Dec. 13, 1973.

Lundy, Butler, Wilson & Hall, Eldora, for appellants.

Swisher & Cohrt, Waterloo, for appellees Norman F. Lemmon and Kay Ellann Lemmon.

Barnes, Wadsworth, Elderkin, Locher & Pirnie, Cedar Rapids, for appellee Merwin R. Dieckmann.

REES, Justice.

This appeal involves two separate cases; cause number 55498 is an action by Lena Freese to recover damages for personal injuries, and cause number 55499 is an action by John R. Freese, the husband of Lena Freese, to recover damages for loss of his wife's society, comfort and companionship.

Each petition contained three divisions; divisions I and II are claims against Norman F. Lemmon and Kay Ellann Lemmon, based on specific negligence and *res ipsa loquitur*; division III in each case is a claim against Dr. Merwin R. Dieckmann based on specific negligence, such division having been added by amendment.

The Lemmons were the owners of an automobile which was being operated by defendant Norman F. Lemmon on September 21, 1969, and which defendant Norman Lemmon drove into and against plaintiff Lena Freese, causing her to sustain substantial injuries. The claims of respective plaintiffs against defendants Lemmon are not involved in this appeal.

The petitions in both cases allege that on September 21, 1969 defendant Norman Lemmon drove an automobile, owned by him and his wife, off of the paved portion of Rainbow Drive near the entrance to the Hippodrome of the Dairy Cattle Congress in Waterloo, striking the plaintiff Lena Freese, and pinning her against an automobile parked nearby, causing injuries to her left leg and knee, fracturing her pelvis, and causing injuries to her lower abdomen and thigh. In her petition she specified the negligence of defendant Norman Lemmon in several respects which we need not consider here, as the Lemmons are not involved in this appeal.

The petition of plaintiff John R. Freese was couched in substantially the same language, and alleged the same specifications of negligence as did the petition of plaintiff Lena Freese. In one of the specifications of negligence which was asserted by plaintiffs in amendments to their respective petitions, they alleged that at the time of the injuries sustained by Lena Freese, defendant Norman F. Lemmon was suffering

from a seizure, becoming unconscious and unable to control the automobile which he was then operating. That said defendant had previously suffered from a seizure and knew, or in the exercise of ordinary care ought to have known, that because of such condition it was dangerous for him to drive an automobile, and that by reason thereof he was negligent in undertaking the operation of an automobile at the time and in the manner complained of in the petitions of the plaintiffs.

Defendant Merwin R. Dieckmann was named as an additional defendant in a second amendment to the respective petitions. In such amendments, plaintiffs asserted that at all times material, defendant Dieckmann was a physician licensed to practice medicine in the State of Iowa, and was practicing at Waterloo; alleged all of the circumstances of the happening of the accident, including the allegation that at the time of plaintiff's injuries defendant Norman Lemmon was suffering from a seizure, becoming unconscious and unable to control the automobile he was then operating. That said defendant had previously suffered from a seizure less than three months prior to plaintiff's injuries and had consulted defendant Dieckmann to diagnose and treat his condition and to advise him in respect thereto. They alleged defendant Dieckmann undertook in his professional capacity as a medical doctor to diagnose and treat the aforesaid condition of Norman Lemmon, and to advise him with respect thereto, and that defendant Dieckmann was negligent in:

(1) failing to diagnose and ascertain the cause of the first seizure of defendant Norman Lemmon, and to learn of its reoccurrence;

(2) negligently failing to advise defendant Norman Lemmon not to drive an automobile;

(3) negligently failing to warn defendant Norman Lemmon of the dangers involved in driving an automobile in view of all of the facts and circumstances;

(4) negligently failing to employ recognized and appropriate tests for diagnosis of the cause of defendant Norman Lemmon's first seizure;

(5) negligently failing to take a spinal tap of defendant Norman Lemmon;

(6) negligently advising defendant Norman Lemmon that he could drive an automobile; and

(7) negligently failing to consult a specialist to whom the patient had been referred prior to advising the defendant Norman Lemmon that he could drive an automobile.

Plaintiffs further alleged that the conduct of defendant Dieckmann in all of the foregoing particulars, was willful and wanton, and prayed for exemplary damages in addition to actual damages.

In each of the cases, defendant Dieckmann filed his motion to dismiss the petition of plaintiff against him for the reason that the same failed to state a claim upon which any relief could be granted, and asserted the petitions failed to allege the violation of any duty owed by defendant Dieckmann to the plaintiff Lena Freese (or derivatively, the plaintiff John R. Freese), for that:

(a) the duty to properly diagnose and treat the condition allegedly suffered by Norman F. Lemmon is a duty owed to Norman F. Lemmon only;

(b) any negligence predicated upon the allegation that defendant Dieckmann advised Norman Lemmon to operate an automobile or that he failed to advise Norman F. Lemmon not to drive an automobile, must be based upon knowledge. That there are no operative facts alleged in plaintiffs' petitions to the effect that defendant Dieckmann knew the physical condition of Norman Lemmon would be dangerous to the general public or the plaintiff Lena Freese in particular; and

(c) the plaintiffs in their petitions affirmatively state that defendant Dieckmann

was not aware of any condition of Norman F. Lemmon which would preclude his being able to drive an automobile, and plaintiffs are bound by such allegations.

Trial court sustained the motions to dismiss filed in each of the plaintiff's cases. In its ruling trial court found that actual knowledge of the condition of Norman Lemmon by Dr. Dieckmann is not alleged by the plaintiffs in their petitions. Trial court, in its ruling, placed reliance on the case of Ryan v. Kanne, 170 N.W.2d 395 (Iowa 1969), a case involving an accountant. The court also found that in the matters before us here there was no element of conscious reliance by plaintiff Lena Freese upon the diagnosis and treatment of Lemmon by Dr. Dieckmann, or that there was anything in the pleading to indicate that Mrs. Freese was known to Dr. Dieckmann. In conformity with a motion by plaintiffs to enlarge the findings, the court further found plaintiffs' petitions alleged actual knowledge by defendant Dieckmann of the first seizure suffered by defendant Norman Lemmon, but found that such allegation was not sufficient and that plaintiffs' petitions failed to allege that defendant Dieckmann had actual knowledge of the condition of Lemmon which caused or led to the first seizure.

From such rulings sustaining the motions to dismiss in the respective cases, plaintiffs appeal. They assert only one error upon which they rely for reversal, namely: that trial court erred in sustaining defendant Merwin R. Dieckmann's motions to dismiss, and in dismissing plaintiffs' petitions against Dieckmann. The error so assigned is buttressed by several brief points.

I. Rule 104, Rules of Civil Procedure, provides that every defense in law or fact to any pleading must be asserted in the pleading responsive thereto if one is required, or if none is required, then at the trial except that (b) failure to state a claim on which any relief can be granted may be raised by motion to dismiss such claim, filed before answer, and (d) such

motions must specify wherein the pleading they attack is claimed to be insufficient.

We must, therefore, examine the petitions of the plaintiffs to determine whether it appears to a certainty plaintiffs have failed to state a claim on which any relief may be granted under any state of facts which could be proved in support of the claims asserted by them. See Osbekoff v. Mallory, 188 N.W.2d 294, 299 (Iowa 1971); Wheeler v. Waller, 197 N.W.2d 585, 586 (Iowa 1972).

In its ruling on the motions to dismiss of defendant Dieckmann, and particularly and specifically, in the ruling on the motion for enlargement of findings, trial court found plaintiffs' petitions alleged actual notice by defendant Dieckmann of the first seizure suffered by defendant Norman Lemmon, but further found plaintiffs' petitions failed to allege defendant Dieckmann had actual knowledge of the condition of his patient which caused or led to the first seizure.

It occurs to us that the specifications of negligence asserted by plaintiffs in their respective petitions, adequately serve to charge defendant Dieckmann with negligence in failing to employ recognized procedures to determine the cause of Lemmon's first seizure, and that such allegation, coupled with the allegations that Dieckmann:

(a) negligently failed to advise defendant Norman Lemmon not to drive an automobile;

(b) negligently failed to warn defendant Norman Lemmon of the dangers involved in driving an automobile in view of all the facts and circumstances; and

(c) defendant Dieckmann negligently advised the defendant Norman F. Lemmon that he could drive an automobile;

are so specific that it cannot be said that to a certainty it is made to appear plaintiffs have failed to state a claim on which any relief may be granted under any state of

facts which could be proved in support of the claims asserted by them.

The motions to dismiss of defendant Dieckmann filed in the respective cases, we feel, invade the area of substantive law and are not properly directed to the basic proposition that the petitions of the plaintiffs fail to state a cause of action or claim on which any relief could be granted, provided of course a state of facts might be established by plaintiffs in support of their asserted claims. A long line of Iowa cases have enunciated the rule. See Newton v. City of Grundy Center, 246 Iowa 916, 920, 70 N.W.2d 162, 164; Ke-Wash Co. v. Stauffer Chemical Co., 177 N.W.2d 5, 9 (Iowa 1970); Lagerpusch v. Lindley, 253 Iowa 1033, 1036, 115 N.W.2d 207, 209; Nelson v. Wolfgram, 173 N.W.2d 571, 573 (Iowa 1970); Osbekoff v. Mallory, *supra*; Wheeler v. Waller, *supra*; Halvorson v. City of Decorah, 258 Iowa 314, 319, 138 N.W.2d 856, 860.

The case of Ryan v. Kanne, *supra,* which was referred to by trial court in its rulings on defendant's motions to dismiss may be referrable to the substantive propositions urged by defendant Dieckmann in his motions to dismiss, but is not relatable to the basic proposition as to whether or not the motion to dismiss in these cases should have been sustained on the basis that plaintiffs' petitions failed to state a cause of action against Dieckmann.

We conclude trial court erred in its ruling sustaining the motions of defendant Dieckmann to dismiss petitions of plaintiffs as to him. We are unable to adopt the reasoning of the trial court and to say that the petitions of plaintiffs as a certainty failed to state claims on which any relief might be granted under any state of facts which could be proved in support of the claims asserted by them.

II. We deem it unnecessary to consider the other propositions urged by appellants as our conclusions in division I, *supra,* necessitate a reversal of trial court.

Trial court erred in sustaining defendant Dieckmann's motions to dismiss plaintiffs' petitions as to him. This case is, therefore, reversed and remanded.

Reversed and remanded.

UHLENHOPP, REYNOLDSON, HARRIS and McCORMICK, JJ., concur.

UHLENHOPP, J., concurs specially joined by REYNOLDSON, HARRIS and McCORMICK, JJ.

LeGRAND, J., dissents joined by MOORE, C. J., and MASON and RAWLINGS, JJ.

UHLENHOPP, Justice (concurring).

I concur in the majority opinion. Plaintiffs allege that Dr. Dieckmann negligently failed to diagnose Norman Lemmon's condition and negligently advised Lemmon "that he could drive an automobile." A motion to dismiss is sustainable only if it appears to a certainty the plaintiffs could not recover under any state of facts provable under their petition. Osbekoff v. Mallory, 188 N.W.2d 294 (Iowa). It seems to me that under their petition, plaintiffs could prove facts bringing them within § 311(1)(b) of the Restatement of Torts 2d:

One who negligently gives false information to another is subject to liability for physical harm caused by action taken by the other in reasonable reliance upon such information, where such harm results . . . to such third persons as the actor should expect to be put in peril by the action taken.

See also Comment b to that section ("Thus it is as much a part of the professional duty of a physician to give correct information as to the character of the disease from which his patient is suffering, where such knowledge is necessary to the safety of the patient *or others,* as it is to make a correct diagnosis or to prescribe the appropriate medicine." Italics added.).

Cf. Jones v. Stanko, 118 Ohio St. 147, 160 N.E. 456; Skillings v. Allen, 143 Minn. 323, 173 N.W. 663.

If plaintiffs introduce evidence on trial from which a jury could reasonably find (1) that Dr. Dieckmann negligently advised Lemmon he could drive, (2) that in the exercise of due care Dr. Dieckmann should have expected that members of the public would thereby be put in peril, (3) that Lemmon drove in reasonable reliance upon the advice, (4) that Lemmon suffered a recurrence of his malady, (5) that Lemmon struck Lena Freese as a result, and (6) that plaintiffs were thereby damaged, then a jury case would be presented against Dr. Dieckmann under § 311, supra. These matters would constitute a state of facts provable under the petition. (As to what is due care or negligence by a physician, see Grosjean v. Spencer, 258 Iowa 685, 140 N.W.2d 139.)

The rule of the Restatement is limited to cases involving "physical harm." Hence it is inapplicable to cases involving financial matters, such as accounting reports or title opinions. See Ryan v. Kanne, 170 N.W.2d 395 (Iowa). In the case of an attorney's title opinion addressed to a client, for example, a third person realizes the opinion was given for the use of the client and not for the third person, and if the third person relies on the opinion he does so at his peril. Not so with a third person standing on the street who is struck by a motorist undergoing a convulsion. The third person does not rely on a doctor's statement that it is all right for the patient to drive. The patient, who was intended to rely on that statement, relies on it and drives, and the public is thereby endangered.

The Restatement rule does not require that the doctor *know* the statement is false. All that is required in this connection is that the statement be not true and that the doctor "negligently" give it. Restatement, Torts 2d § 311(1)(b) ("One who negligently gives false information" etc.).

I concur therefore in reversal of the judgment.

REYNOLDSON, HARRIS and McCORMICK, JJ., join in this Concurrence.

LeGRAND, Justice (dissenting).

This case reaches us on an appeal from an order sustaining a motion to dismiss plaintiff's petition as to the defendant Dr. Merwin R. Dieckmann. Of course, we accept the well-pleaded facts as true in determining whether the petition states a cause of action against the doctor.

It is alleged Dr. Dieckmann negligently told his patient (defendant Norman F. Lemmon) he could safely drive an automobile despite an earlier "seizure," a condition for which he had sought Dr. Dieckmann's medical help. From this, the majority holds Dr. Dieckmann may be responsible to those injured in a subsequent automobile accident allegedly occurring because defendant Lemmon again blacked out.

No authority is cited to support such a result, and I dissent from it.

Until rather recent times, plaintiff's petition would have been summarily dismissed on the ground there was no duty owing from Dr. Dieckmann to her—no privity upon which to base liability. The privity concept has been greatly weakened, if not completely scrapped, when circumstances exist from which it is apparent the wrongdoer should have anticipated reliance by a third party upon his conduct and which present facts making it manifestly unfair to allow him to escape responsibility for his negligence. No case, however, has carried that doctrine to the extreme which the majority does here. I believe that the consequences of the majority opinion are both far-reaching and indefensible.

This whole subject received extended discussion by then Chief Judge Cardozo in the New York case of Ultramares Corp. v. Touche, 255 N.Y. 170, 174 N.E. 441, 74 A. L.R. 1139 (1931). That case involved a third-party claim against an accountant who was alleged to have been negligent in the preparation of a financial statement

for a firm which had employed him for that purpose. That opinion has been both widely cited and roundly criticized. See Ryan v. Kanne, 170 N.W.2d 395, 401 (Iowa 1969) and Rusch Factors, Inc. v. Levin (D.C., Rhode Island, 1968), 284 F. Supp. 85, 90 and citations. Nevertheless, that opinion, which refused to extend an accountant's liability for *negligent* misconduct to persons the accountant had no reason to believe would rely on his statement, contains observations which are even more persuasive under the circumstances now facing us than they were in 1931 when that case was decided.

Several excerpts from that opinion are worth repeating:

"If liability for negligence [of an accountant to third parties] exists, a thoughtless slip or blunder, the failure to detect a theft or forgery beneath the cover of deceptive entries, may expose accountants to a liability in an indeterminate amount for an indeterminate time to an indeterminate class. *The hazards of a business conducted on these terms are so extreme as to enkindle doubt whether a flaw may not exist in the implication of a duty that exposes to these consequences.*" (174 N.E. at 444) (Emphasis added).

In distinguishing Glanzer v. Shepard, 233 N.Y. 236, 238, 135 N.E. 275, 23 A.L.R. 1425 (1922) from the Ultramares case, Judge Cardozo pointed out that in Glanzer the act which was negligently performed was for the very purpose of furnishing a weight certificate to the complaining party. It was the "end and aim of the transaction" and both principals to the transaction knew this. (174 N.E. 445.)

Another significant statement made by Judge Cardozo appears at page 448 of 174 N.E.:

"Liability for negligence if adjudged in this case will extend to many callings other than an auditor's. Lawyers who certify their opinion as to the validity of municipal or corporate bonds, with knowledge that the opinion will be brought to the notice of the public, will become liable to the investors, if they have overlooked a statute or a decision, to the same extent as if the controversy were one between client and advisor. Title companies insuring titles to a tract of land, with knowledge that at an approaching auction the fact that they have insured will be stated to the bidders, will become liable to purchasers who may wish the benefit of a policy without payment of a premium. These illustrations may seem to be extreme, but they go little, if any, farther than we are invited to go now. Negligence, moreover, will have one standard when viewed in relation to the employer, and another and at times a stricter standard, when viewed in relation to the public."

We considered an analogous problem in Ryan v. Kanne, supra, a suit against an accountant who had certified an erroneous financial statement which was then relied upon by the purchaser of the business. The accountant knew the purpose for which the statement was prepared and even knew the persons to whom it was to be submitted. He also knew that it was to be used in connection with the sale of a business and that it would be relied upon by those negotiating a transfer of the business.

This court recognized in Ryan the problem which now faces us by refusing to extend the rule beyond the circumstances directly at issue in the Ryan case. We said there:

"In other words, we believe the position announcement in the Restatement proposed draft [section 552, Torts 2d] may be accepted to the extent that it extends the right to recover for negligence to persons for whose benefit and guidance the accountant *knows* the information is intended, especially when the party to be benefited is identified before the statement or report is submitted by the ac-

countant." (170 N.W.2d at page 403). (Emphasis in original).

I believe there are grave consequences in adopting a doctrine which imposes unlimited liability against physicians who may have negligently advised or treated their own patients. No case has been cited, and I have been unable to find any, which even approaches in scope and importance the public policy disadvantages which the majority opinion entails.

Although the principle may be the same, these public policy considerations have infinitely greater impact when applied to doctors than to others. Be that as it may, however, the general principle itself has occasioned a word of caution from both courts and writers. In Harper and James, The Law of Torts, (1956), section 18.6 at page 1052, the authors in discussing the general proposition of extending a duty to remote third persons say this:

"The ultimate question is whether such a duty *should* be imposed as a matter of policy. This in turn will depend on the balancing of several factors, namely, the burden it would put on defendant's activity; the extent to which the risk is one normally incident to that activity; the risk and the burden to the plaintiff; the respective availability and cost of insurance to the two parties; the prevalence of insurance in fact; the desirability and effectiveness of putting the pressure to insure on one rather than the other, and the like. A judicious regard for such realistic considerations might justify liability in some situations and not in others even where there is no basis in doctrine for such a distinction." (Emphasis in original.)

A case note in 20 Drake Law Review, 411, 416 (January 1971) in discussing our Ryan v. Kanne decision mentions the limits on liability imposed there as follows:

"These limitations appear to be both usable to the accountants and the court and yet remain fair to the accountants and

innocent third parties. If, however, the courts interpret this holding as authority for substantially increased liability for not only the accounting profession but also 'other recognized professions', then perhaps a return to the protection of privity would be advisable."

A similar caveat is voiced in the annotation in 45 A.L.R.3d, 1181–1205 (1972), which deals with the liability of attorneys. There the annotator says at 1185:

"It is submitted that neither the strict privity doctrine, with its potential for unrecompensible injury to innocent parties, nor a complete abandonment of privity, entailing a vast range of potential liability, presents a workable solution to the question of an attorney's liability to third parties. Rather, it would appear that the issue should be determined, on a case by case basis, by the balancing of a number of factors, including the extent to which the transaction involved the third party, the foreseeability of harm to the third party, the closeness of the connection between the negligence and the injury suffered, and the policy of preventing future harm."

See Biakanja v. Irving, 49 Cal.2d 647, 320 P.2d 16, 19 (1958) and Donald v. Garry, 19 Cal.App.3d 769, 97 Cal.Rptr. 191, 45 A.L.R.3d 1177 (1971); cf. Anno. 45 A.L. R.3d 979 (1972).

The present case involves serious and far reaching consequences to many businesses and professions. We recognized that the rule adopted in the Ryan case "may be applicable in other recognized professions, such as abstractors and attorneys." (170 N.W.2d 402).

The public policy considerations inherent in this rule under any circumstances become of overriding importance when applied to medical practitioners. It is impossible to resolve the issue without taking into account the crisis which confronts us as to both the availability and cost of adequate health care. See 57 I.L.R. 1004,

1006 (April 1972). Today's opinion, if permitted to stand, can only aggravate an already grave problem, which finds medical help frequently unavailable at all and its cost, when it is available, fast reaching prohibitive amounts.

This opinion will have several immediate untoward results. It will cause physicians, when possible, to shun cases exposing them to such limitless liability or their advice will be ultraconservative in justified apprehension over the fate which awaits them if they give what might otherwise have been sound medical counsel.

Furthermore, if such liability is to be borne by the medical profession, the already oppressive cost of medical attention must be further increased. No matter how this is accomplished—by insurance or without it—it is the patient who must ultimately pay.

I also desire to note my disagreement with the special concurring opinion in which Justice Uhlenhopp ·says plaintiff pleads a cause of action under section 311(1)(b), Restatement of Torts 2d. That section is set out in the special concurrence.

I cannot agree that the doctor's alleged advice as set out in the petition can be said to have been "false" any more than a lawyer's incorrect prediction as to the outcome of litigation is "false." This is the type of statement to which neither falsity nor verity attaches. The section relied on has no application under the pleaded facts.

The special concurrence relies on two cases, neither of which meets the issue. In both Jones v. Stanko, 118 Ohio St. 147, 160 N.E. 456 (1928) and Skillings v. Allen, 143 Minn. 323, 173 N.W. 663 (1919) the court was dealing with contagious diseases. The doctor in each case *personally* told the third party involved that it was safe to come in close association with the disease. The third party in each case relied on the representations the doctor had made to him and upon which the doctor knew he would

act. To that extent these cases are much like Glanzer v. Shepard and Ryan v. Kanne, both of which have been previously referred to.

I would affirm the trial court on two grounds. First, there is no authority to support the conclusion reached by the majority; and, second, public policy considerations make such an imposition of limitless liability indefensible.

MOORE, C. J. and MASON and RAWLINGS, JJ., join in this dissent.