## M and G Convoy Inc. v. Somerset Drug Company

*Richard J. Catalano,* for plaintiff.
*Arthur A. Asti, Jr.,* for defendant Alfred J. Poggi, M.D.

COFFROTH, *P.J.,* July 28, 1982 — This trespass action is here on preliminary objections of defendant Poggi M.D. demurring to the complaint on the ground that it alleges no physician-patient relationship between said defendant and plaintiff and therefore no duty of care to plaintiff arising from the prescription of medication by defendant for plaintiff's employee on which the action is based, and in the alternative, moving to strike the complaint's ad damnum clause for incorrectly alleging the amount of damages claimed in violation of Civil Rule 1044(b).

### FACTS

On or about 1:30 a.m. on September 18, 1979, on U.S. Route 209 near West Falls, Pike County, Pa.,

additional defendant Dancho as the employee of plaintiff was operating a tractor-trailer (car carrier), when he dozed off and collided with another tractor-trailer, causing damage to plaintiff's car carrier and damage to the other tractor-trailer and injuries to its driver for which plaintiff was compelled to pay, for which this action is brought. Additional defendant Dancho's dozing off and causing the collision and damages were caused solely by medication which he had been taking which had been prescribed by defendant Poggi, Dancho's physician, and purchased from Somerset Drug Company.

Count I of the complaint is against defendants Somerset Drug and Wagner (Waggoner) Somerset Drug's employee, and is not presently involved. Count 2 of the complaint is against Poggi and is based on the following averments of negligence:

"14. At the time that the plaintiff's driver, Dancho, received the prescription from Dr. Poggi, the doctor negligently failed to warn Dancho of the potential dangers in taking the drug Atarax or of the facts which made it likely to be dangerous, as required under section 388 of Restatement (Second) of Torts. In particular, the defendant Dr. Poggi failed to warn the plaintiff's operator that the drug could cause drowsiness and that he should not operate a motor vehicle while taking the medication."[1]

The essence of the physician's preliminary objections is that his duty was only to his patient (Dancho) who is not a plaintiff, that he owed no duty to plaintiff who was the patient's employer, and therefore that plaintiff has no cause of action against the physician.

---

1. The first count's bases for relief are Restatement (Second) of Torts §402A (Product Liability) and section 388 discussed in the opinion.

## DISCUSSION

### Demurrer

Counsel for the parties begin with a disagreement over which section of the Restatement (Second) of Torts correctly states the duty applicable to this case which is based on the alleged negligence of a physician in failing to warn a patient of a prescribed drug's side effect. Plaintiff's counsel relies on section 388 which provides as follows:

"§388. Chattel Known to be Dangerous for Intended Use

"One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier

(a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and

(b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and

(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous."

He reasons that the drug prescribed by defendant physician is a "chattel" (an article of personal property) supplied by the physician through a third person (defendants Somerset Drug and Wagner); that the physician knowing of the tendency of the drug to create drowsiness must also know and foresee

that use thereof by a driver of a motor vehicle can impair fitness to drive and cause collision with resulting personal injury and property damage to the user of the drug and others on the highway; that the user and those others are persons whom the physician should expect will be endangered by an operator under the drug's influence; that the operator is not likely to realize the dangerous character of the drug unless informed of it, and that therefore use of the drug by such operator while driving is a probable use which the physician in the exercise of reasonable care should have foreseen and guarded against by informing the patient of the drug's effects.

Counsel for defendant contends that section 388 is applicable only in favor of a person who is directly injured by the chattel (drug), not to injuries more remotely caused by an intervening third force (here, the vehicle operator); and that since plaintiff was not injured by the "actual use of the drug" plaintiff has no claim against the physician. He also contends that the physician's "duty was to plaintiff's driver (patient) and no one else." Defense counsel further contends that it is section 323 (formerly section 325) of the Restatement which applies and which provides as follows:

§323. Negligent Performance of Undertaking to Render Services

"One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

(a) his failure to exercise such care increases the risk of such harm; or

(b) the harm is suffered because of the other's reliance upon the undertaking."

He then reasons that the physician, instead of being the supplier of the chattel within section 388, is the renderer of services under section 323, whose terms make him "subject to liability to the other [the patient] for physicial harm" resulting from lack of reasonable care in performing the services, and not to liability to third persons such as plaintiff; and again concludes that the duty of the person rendering service is only to the person served (patient).

Undoubtedly, there is a significant difference in the language in the two sections describing the persons to whom liability extends; section 388 subjects the actor to liability "to those whom the supplier should expect to use the chattel with the consent of the other *or* to be endangered by its probable use," whereas section 323 subjects the actor to liability "to the other" person to whom the services were rendered without mentioning others who might be endangered. Assuming (without deciding) that section 323 does not extend the physician's liability beyond the patient, and that it is important to determine whether the prescribing physician is a chattel supplier (directly or through a third person) or a performer of services, the plain truth is that he is both; that compels us to say that he is subject to the liability imposed by section 388 insofar as he furnishes a drug or device to his patient; and since that section subjects him to liability not only to his patient but to anyone "whom the supplier should expect . . . to be endangered by its probable use," a physician may be liable for all of the consequences of which his negligently prescribing a drug for his

patient without warning of known side effects are a legal cause.[2]

We cannot credit the defense argument that the phrase "endangered by its [the drug's] probable use" refers only to danger from actual taking of the drug; consistent with the general rules of negligence, that language must be construed to encompass any person endangered either by taking the drug or by the resulting conduct of the person who takes it if the consequences are reasonably foreseeable to the supplier. Therefore Dancho's actions in operating the motor vehicle at the time of the collision, even if negligent, are not necessarily an intervening superseding cause under the applicable general rules of tort causation. The subcommittee note to section 3.28 of Draft Standard Civil Instructions states that the only proper inquiry is whether the first cause or force is *a* substantial factor in causing the damage claimed, whether viewed alone or in combination with some later causative event; the rule there stated is:

"A subsequent act is *not* a superseding cause insulating the defendant from liability if the defen-

---

2. Compare section 324A which provides as follows:

"§324 A. Liability to Third Person for Negligent Performance of Undertaking

"One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

(a) his failure to exercise reasonable care increases the risk of such harm, or

(b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking."

dant's negligence was a substantial contributing factor to the accident, either by creating or increasing the risk of harm itself or creating or increasing the risk of harm from subsequent acts of another." (Emphasis in original.) See: Ford v. Jefferies, 474 Pa. 588, 379 A.2d 116 (1977); Berkebile v. Nationwide Insurance Company et al. (No. 2), 40 Somerset L. J. 368 (1981). See also Restatement (Second) of Torts §442B which provides as follows:

§442 B. Intervening Force Causing Same Harm as That Risked by Actor's Conduct

"Where the negligent conduct of the actor creates or increases the risk of a particular harm and is a substantial factor in causing that harm, the fact that the harm is brought about through the intervention of another force does not relieve the actor of liability, except where the harm is intentionally caused by a third person and is not within the scope of the risk created by the actor's conduct."

In this case, plaintiff's loss is sufficiently pleaded to create an issue of defendant's causal negligence for trial before a jury. This assumes of course that the evidence produced will be sufficient to warrant a finding that the patient would not have used the drug while driving had he known of the side effects, or that the failure to warn was a substantial factor in his using it while driving.[3]

---

3. Section 388 was clearly intended to include drugs as chattels, as appears from Illustration 2 to section 388, as follows:

"Illustration:

"2. A is a guest in B's house. A is taken suddenly ill. B gives him a drug which B knows can only be safely used if taken in certain doses and under certain conditions. B gives the drug to A, but forgets to instruct him as to the manner in which it is to be used. A takes it in a larger dose than is proper, or fails to take the precautions which are necessary to make it safe. In consequence A's illness is increased. B is subject to liability to A."

The defense contention that a physician's liability can extend no further than the doctor-patient relationship is nothing more than the privity argument all over again. The idea that one who supplies goods and/or services to another has responsibilities of care only to those with whom he has chosen to deal in privacy (privity) of contract, and let all others beware, is but a device to avoid the responsibilities of the general law of negligence; privity is inconsistent with modern notions of man's duty of humanity to man, and has in recent years been uniformly rejected by the courts whenever it has surfaced. Everyone owes to each other a minimum duty to use reasonable care to avoid risk of harm to others, and as well to himself; and everyone has the right to expect the same from others. The principles of negligence law are thus a universal ethical imperative enjoined upon all humans as a condition of civilized existence in a complex and crowded world. There is no reason to exempt physicians, or lawyers or anyone else, from it.[4]

The courts which have considered the present problem have generally reached the same result as we have. In Tarasoff v. Regents of University of California, 551 P2d 334 (Cal. 1976), the court held that

---

4. The arguments for privity (and for similar privilege such as sovereign immunity) and the earlier judicial decisions adopting such limitations, are often based on the idea that the cost of liability would simply be passed on to customers of the supplier who should not be required to bear it. The theory conveniently overlooks two salient points: (1) from the vigor with which the privity argument is asserted by those whom it benefits, it is reasonably inferable that it is not as easy to pass on such costs as the argument assumes and that the actor usually ends up bearing some part of the cost, and (2) ethical justice and as well the practical interests of society are better served by distributing those costs among a larger number of users of the product than by loading them all upon the innocent victim and excusing the actor who caused them by culpable negligence.

a psychiatrist owes his duty of care not merely to the patient but to any and all persons who are foreseeably endangered by treatment of the patient; the case imposed liability on the physician for failing to use reasonable care in releasing a mental patient to society under circumstances foreseeably likely to cause harm to others. See also Lepari v. Sears Roebuck & Co., 497 FS 185 (Neb. 1980). In Kaiser v. Suburban Transportation System, 398 P2d 14 (Wash., 1965), plaintiff was a passenger in defendant's bus and was injured when the bus driver lost consciousness and struck a telephone pole; the driver's loss of consciousness came from drowsiness which was the side effect of a prescribed drug he was taking and the prescribing physician was also made a defendant in the action because of his failure to warn the patient of the drug's effects; the trial judge dismissed the case against the physician on the ground that the driver's failure to stop when he felt drowsy was a negligent intervening cause which superseded and rendered non-causal the physician's negligence; on appeal, the Supreme Court reversed the trial judge and sent the case back for trial against the physician because he knew the drug's potential hazards and that his patient was a bus driver, and had failed to warn him of those hazards.[5] In general accord is Freese v. Lemmon,

---

5. The defense response brief calls to our attention the fact that "nowhere does plaintiff allege that defendant Poggi knew or had reason to know that Mr. Dancho's employment required him to operate a motor vehicle." We do not consider it essential that the physician know or have reason to know that the patient drove a "bus," or that his "employment" required him to drive a motor vehicle. It is essential, however, that the evidence establish that the physician knew or should have known that defendant was a motor vehicle operator and might drive while taking the drug unless warned. In our society today, almost everyone drives, and it might be most reasonable to require the physician to assume that his patient is a driver unless he has some reason to think otherwise. However that

210 NW2d 576 (Iowa, 1973), in which plaintiff was struck and injured by the car driven by the patient under the influence of a prescribed drug and in which the court refused to dismiss the complaint which contained allegations of the physician's negligence in failing to warn the patient of known risks.[6] On related issues of physician negligence

may be, we think the averments of paragraph 14 of the complaint quoted ante reasonably imply that defendant knew or had reason to know that the patient drove a vehicle and are sufficient to raise the issue at trial and to withstand demurrer; although it would have been better to make an explicit allegation of such knowledge or reason to know, defendant has not filed a motion for more specific pleading of negligence on this ground.

6. In Freese v. Lemmon, supra, one judge dissented on the ground that the case should be governed by Restatement (Second) of Torts §311 which provides as follows:

"§311. Negligent Misrepresentation Involving Risk of Physical Harm

"(1) One who negligently gives false information to another is subject to liability for physical harm caused by action taken by the other in reasonable reliance upon such information, where such harm results

(a) to the other, or

(b) to such third persons as the actor should expect to be put in peril by the action taken.

(2) Such negligence may consist of failure to exercise reasonable care

(a) in ascertaining the accuracy of the information, or

(b) in the manner in which it is communicated."

The instant case is not one in which the physician gave any false information to this patient, but instead failed to give important information. Hence, section 311 is inapplicable here.

The same judge also dissented on the ground that imposition of liability on the physician would result in increased costs to the public. See note [4] ante. He also thought that prospects of such liability might influence physicians to shun their duty in hard cases and to become ultra-conservative in their advice. We do not share that view; all that is required is reasonable care, which is not too much for society to demand or to expect from all of its citizens, "rich man, poor man, beggar man, thief, doctor, lawyer, indian chief."

and burden of proof, see: Leibowitz v. Ortho Pharmaceutical Corp., 224 Pa. Super. 418, 307 A.2d 449 (1973); Sharpe v. Pugh, 155 SE2d 108 (NC, 1967); Aiken v. Clary, 396 SE2d 668 (Mo., 1965); Gravis v. Parke-Davis & Co., 502 SE2d 863 (Tex., 1973); Hamilton v. Hardy, 549 P2d 1099, 1104-1105 (1976); Le Beuf v. Atkins, 594 P2d 923 (1979) quoting and relying on Trogan v. Fruchtman, 207 NW2d 297, 315 (Wis., 1973); Reyes v. Wyeth Laboratories Inc., 498 F2d 1264 (CA 5, 1974); Watkins v. U.S., 482 FS 1006 (MD, Tenn, 1980); Niblack v. U.S., 438 FS 383 (DC, Col., 1977).

## MOTION TO STRIKE

Civil Rule 1044(b) on which this objection is based provides as follows:

"(b) Any pleading demanding relief for unliquidated damages shall without claiming any specific sum, set forth only whether the amount is in excess of, or not in excess of $10,000."

The claim for relief in this case violates that rule by stating: "Wherefore plaintiff demands judgment against the defendant . . . for an amount in excess of $46,136.58, plus a sum for lost revenues, interest and court costs." Accordingly, the complaint must be amended to comply. In this connection, we point out that although the $10,000 figure was originally imposed because of appellate jurisdictional relevance, the amount no longer has such relevance but is important to us locally because our arbitration limit is now $10,000. See: PennDOT v. Bethlehem Steel Corp., 28 Pa. Commw. 214 (1977); Hawrylak v. Slickerman, 28 Somerset L.J. 196 (1972); Goodrich Amram 2d §1044(b): 1.

## ORDER

Now, July 28, 1982, the demurrer to plaintiff's complaint is overruled, the motion to strike the ad damnum clause of the complaint is granted with 20 days to amend.