Diane FLYNN, Appellant,

v.

HOUSTON EMERGICARE, INC. and Dr. Ron Kremer, Appellees.

No. 01–92–01117–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 31, 1993.

Opinion Overruling Motion for Rehearing Jan. 6, 1994.

Ronald L. Bair, Joanna F. Miller, Chalker, Bair & Associates, P.C., Houston, for appellant.

John D. Ellis, Jr., John R. Shepperd, Ellis & Shepperd, Houston, for appellees.

Before HEDGES, DUGGAN and O'CONNOR, JJ.

## OPINION

HEDGES, Justice.

This appeal arises from a summary judgment granted in favor of defendants Houston Emergicare, Inc. and Ron Kremer, M.D. In two points of error, appellant Diane Flynn urges that the trial court erred in granting the summary judgment. We affirm.

### 1. Fact Summary

Plaintiff Diane Flynn appeals a summary judgment in favor of defendants, Houston Emergicare, Inc. and Dr. Ron Kremer. On January 6, 1988, plaintiff was injured in a rear-end collision caused by William J. Broadus. About one hour before the accident, Broadus had been treated by Dr. Ron Kremer, who was employed by Houston Emergicare, Inc. at the Houston Northwest Medical Center. Plaintiff sued defendants, alleging that they were negligent in failing to admit Broadus to the hospital for observation and in failing to warn Broadus not to drive for a specified period of time.

Defendants moved for summary judgment on plaintiff's ninth amended petition. The summary judgment evidence consisted of the affidavit of Dr. Ron Kremer and excerpts from the depositions of Broadus and of the plaintiff's expert witness, Dr. Blake Berry.

In excerpts from his deposition, Broadus stated that about 8:30 [1] on the night before the accident he snorted cocaine provided by a girl with whom he had sex. He awoke about 5:30 the next morning feeling "kind of sluggish." When he got into the shower, he felt a "heavy pressure in his chest" as if he were having a heart attack. He drove himself to the emergency room.

Dr. Ron Kremer stated in his affidavit that he examined Broadus at approximately 7:30 a.m. on January 6, 1988. Broadus had come to the emergency room of Houston Northwest Medical Center complaining of chest pain. The doctor took an electrocardiogram and a chest X-ray and placed Broadus placed on a cardiac monitor. The exam and history indicated that Broadus was experiencing a "hyperadrenergic excess sympathetic state of stimulation secondary to cocaine use." Dr. Kremer prescribed ten milligrams of Inderol, a "betablocker," to slow the heart rate and lower the blood pressure. Dr. Kremer's affidavit indicated that there are no known side effects to Inderol at the dosage prescribed, and that based on reasonable medical probability, the prescription would not incapacitate the patient, cause drowsiness, or impair his ability to drive.

Dr. Berry stated that unless he could find a "specific definite cause" for chest pain or unless a private physician examined and released a patient complaining of chest pain, he would admit the patient for 24-hour observation to rule out "myocardial infarction or myocardial ischemia." Under similar circumstances, he would instruct a patient not to drive even if the symptoms of intoxication had abated.

### 2. Summary Judgment

A summary judgment for the defendant disposing of the entire case is proper only if, as a matter of law, the plaintiff could not succeed upon any theories pleaded. *Delgado v. Burns*, 656 S.W.2d 428, 429 (Tex.1983); *Havens v. Tomball Community Hosp.*, 793 S.W.2d 690, 691 (Tex.App.—Houston [1st Dist.] 1990, writ denied).

In her ninth amended petition, plaintiff asserted that defendants were negligent in the care and treatment of Broadus in the following particulars: (1) failing to properly monitor Broadus' total health and medical clinical picture and failing to properly diagnose the nature, extent, and status of his

---

1. This detail was contradicted by Dr. Kremer, who stated in his affidavit that Broadus' medical history indicated that Broadus had been taking cocaine off and on between 11:00 p.m. and 3:00 a.m.

medical and physical condition; (2) failing to admit him to the hospital for observation and failing to assure that he had safe and controlled passage from the hospital; and (3) failing to warn him of the "crash" phenomenon associated with cocaine use and failing to warn him not to drive. Plaintiff would extend defendants' duty to treat Broadus in a nonnegligent manner beyond the patient himself to the general public.

■ This is not a medical malpractice case falling under the Medical Liability and Insurance Improvement Act. That statute defines a "health care liability claim" in terms of the relationship between the physician and patient as follows:

> [A] cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care or health care or safety which proximately results in injury to or death of *the patient,* whether *the patient's* claim or cause of action sounds in tort or contract.

Tex.Rev.Civ.Stat.Ann. art. 4590i, § 1.03(a)(4) (Vernon Supp.1993) (emphasis added). It is undisputed that no doctor-patient relationship existed between Dr. Kremer and plaintiff. Common-law negligence comprises plaintiff's sole ground for recovery.

Defendants moved for summary judgment on the basis that they owed no duty to plaintiff as a member of the public and absent a doctor-patient relationship with defendants. Any negligence action requires that there must first be a duty flowing from the defendant to the plaintiff. *See Fought v. Solce,* 821 S.W.2d 218 (Tex.App.—Houston [1st Dist.] 1991, writ denied); *Gooden v. Tips,* 651 S.W.2d 364, 366 (Tex.App.—Tyler 1983, no writ). The existence of a duty under a given set of facts is a question of law. *Greater Houston Transp. Co. v. Phillips,* 801 S.W.2d 523, 525 (Tex.1990); *El Chico Corp. v. Poole,* 732 S.W.2d 306, 311 (Tex.1987). Because the important facts are undisputed, we need not remand this issue to the trial court for a factual determination before we decide whether any duty exists that controls liability in this case. *See W.C.W. v. Bird,* 840 S.W.2d 50, 55 (Tex.App.—Houston [1st Dist.] 1992, writ requested).

In *Gooden,* the plaintiff sought damages from Dr. Tips for personal injuries sustained when the doctor's patient struck Mr. Gooden with the patient's automobile. At the time of the collision, the patient was driving under the influence of the drug Quaalude, which had been prescribed for her by Dr. Tips. The plaintiff alleged that Dr. Tips breached his legal duty to him as a member of the public by negligently prescribing Quaalude for his patient and by failing to warn her not to drive while under the influence of the drug. *Gooden,* 651 S.W.2d at 365. The Tyler Court of Appeals agreed, reversing the trial court's summary judgment in favor of the doctor and holding that "under proper facts, a physician can owe a duty to use reasonable care to protect the driving public where the physician's negligence in diagnosis or treatment of his patient contributes to plaintiff's injuries." *Id.* at 369.

The *Gooden* court limited its holding within a narrow framework. It specifically rejected the imposition of a duty on Dr. Tips to *control* his patient. The nature of the physician's care and treatment of the patient is paramount to the extension of duty beyond the patient to the public:

> The question appears to be essentially one of whether the defendant has gone so far in what he has actually done, and has got himself into such a relation with the patient, that he has begun to affect the interests of the plaintiff adversely, as distinguished from merely failing to confer a benefit upon him.

*Gooden,* 651 S.W.2d at 370 n. 3 (quoting Prosser, *Handbook of the Law of Torts,* § 56, at 339–40 (4th ed. 1971)). The court found that in going so far as to prescribe the drug for his patient, the defendant had begun to injure the interests of the public "by allowing his patient to leave without a warning of the possible adverse effects of the drug." *Gooden,* 651 S.W.2d at 370 n. 3. Therefore, a duty to the public arose because the physician created the impairment that resulted in injury to the plaintiff.

We look to the nature of the defendants' care and treatment of Broadus to decide whether a duty to the public arose in this

case. Because there is no allegation or evidence that defendants did·anything to create the impairment that ultimately resulted in injury to plaintiff, we hold that defendants did not owe plaintiff a duty to warn Broadus not to drive. We agree with defendants that plaintiff has not shown an affirmative act by Dr. Kremer that caused Broadus' impairment.[2] Broadus' ingestion of cocaine caused any impairment that led to his automobile accident, and Dr. Kremer's care and treatment bears no relationship to that incapacity. Therefore, defendants owed no duty to the public to warn Broadus not to drive following his ingestion of cocaine. In so holding, we distinguish the facts in this case from those in *Gooden* insofar as in that case the physician did create the accident-causing impairment when he prescribed Quaaludes to his patient.

We overrule points of error one and two.

We affirm the judgment of the trial court.

## OPINION ON MOTION
## FOR REHEARING

After considering appellant's motion for rehearing, the majority remains of the opinion that there was no error in the trial court. Accordingly, we overrule the motion for rehearing and stand firm on our opinion originally issued on August 31, 1993.

In the recent case of *Wofford v. Blomquist*, 865 S.W.2d 612 (Tex.App.—Corpus Christi 1993, n.w.h.), the Corpus Christi Court of Appeals reaffirmed the general rule that, barring a special relationship, there is no general duty to control the conduct of third persons. *Id.; see also Salinas v. G.M.C.*, 857 S.W.2d 944, 949 (Tex.App.—Houston [1st Dist.] 1993, no writ). This rule controls even if the actor has the practical ability to control the conduct of the third persons. *Graff v. Beard*, 858 S.W.2d 918, 920 (Tex.1993); *Wofford*, 865 S.W.2d at 614. The Corpus Christi

Court of Appeals further stated that foreseeability alone is insufficient to create a legal duty. *Wofford*, 865 S.W.2d at 615.

O'Connor, J., dissenting.

O'CONNOR, Justice, dissenting.

I dissent. The issue here is whether a physician may be held liable to a third-party for an automobile accident caused by the physician's patient who was discharged without a warning from the doctor not to drive. I would hold the physician had a duty to warn his patient not to drive, and failing to do so, he could be liable when the patient caused injury to the driving public.

If the courts of Texas impose liability for injury to the public on a tavern owner for a traffic accident caused by an inebriated guest,[1] on an employer for a traffic accident caused by an inebriated employee who is sent home from work,[2] on a doctor for administering a drug to a patient without warning the patient not to drive,[3] I see no reason why the courts of Texas will not impose liability on a doctor who treats a person for cocaine ingestion and does not tell the patient not to drive. All four cases involve injury to the public; all four cases involve accidents caused by persons who are under the influence of drugs; all four cases involve a defendant who has no other relationship with the plaintiff except for his negligent conduct toward the person who caused the accident.

The person who caused the accident in this case, Broadus, was treated by Dr. Kremer for the after-effects of cocaine ingestion and then released. On the way home, he had a seizure related to the cocaine and ran into the back of the plaintiff's car. The plaintiff was seriously injured. The trial court granted Dr. Kremer a summary judgment on the ground that he had no duty to the plaintiff. On appeal, the plaintiff contends the trial

---

**2.** Plaintiff never alleged that the prescribed drug Inderol created the impairment that resulted in injury to plaintiff.

**1.** *El Chico Corp. v. Poole*, 732 S.W.2d 306, 306 (Tex.1987).

**2.** *Otis Engineering Corp. v. Clark*, 668 S.W.2d 307, 311 (Tex.1984). I recognize that in *Otis*, the

supreme court based its holding on the fact that the employer exercised control over an employee, and had the right to send him home. *Id.* at 310. As the majority states, control is not the issue in this case.

**3.** *Gooden v. Tips*, 651 S.W.2d 364, 366 (Tex. App.—Texarkana 1983, no writ).

court erred in granting the summary judgment because the doctor did not disprove the plaintiff's pleadings—that the doctor should have warned his patient not to drive. Thus, the legal issue is (assuming for summary judgment purposes that the doctor did not tell the patient not to drive): Is the doctor liable to the plaintiff for not warning his patient not to drive?

The majority distinguishes the facts in this case from those in *Gooden v. Tips,* 651 S.W.2d 364, 366 (Tex.App.—Texarkana 1983, no writ) on the ground that the doctor in *Gooden* did not warn his patient about the effects of a drug prescribed by the doctor; here, the doctor did not warn his patient about the effects of a drug ingested for recreational purposes. I do not think that distinction is important.

The majority reasons that because Dr. Kremer did not give Broadus the drug that impaired his driving (he did not "create the impairment" that resulted in the plaintiff's injury), Dr. Kremer did not owe the plaintiff a duty to warn Broadus not to drive. The majority considers Broadus' ingestion of cocaine as the only cause of the automobile accident, and says that "Dr. Kremer's care and treatment bears no relationship to that incapacity." I disagree on both counts. Broadus' ingestion of cocaine was not the only cause of the accident. If Broadus had stayed at the hospital or had taken a taxi home, there would not have been an accident. The accident was caused by both Broadus' ingestion of cocaine and his driving on a public highway while still under the influence of the cocaine. Dr. Kremer bears some responsibility, not for the cocaine ingestion, but for his patient driving while still under the influence of the cocaine.

That is not to say a doctor has responsibility for every condition of a patient that might cause a traffic accident. Here, Broadus sought treatment for the very condition that ultimately caused the accident. Dr. Berry, the plaintiff's expert, testified in a deposition that under circumstances similar to this case

he would instruct a patient not to drive even if the symptoms of intoxication had abated.

If in this case, if both Broadus and the plaintiff had sued the doctor for injuries caused by the automobile accident, the majority would presumably hold the doctor liable to his patient for failing to tell him about the side effects of the cocaine, but not to the plaintiff.[4] I do not understand how we could hold the doctor responsible to the patient but not responsible to the third-party victim of the same accident. In both cases the injury was equally foreseeable.

There is no distinction between *Gooden* and the case before us—the treating doctor has a duty to the public to tell his patient not to drive when he is impaired, either by drugs administered by the doctor or by the condition for which the patient seeks medical attention.

Once the doctor-patient relationship was established, Dr. Kremer assumed a duty to act in a non-negligent manner. "One who voluntarily enters an affirmative course of action affecting the acts of another is regarded as assuming a duty to act and must do so with reasonable care." *Otis Engineering,* 668 S.W.2d at 309. There is no distinction between misfeasance and nonfeasance if nonfeasance means simply omission to do something there is an affirmative duty to do. *S.H. Kress & Co. v. Selph,* 250 S.W.2d 883, 892 (Tex.App.—Beaumont 1952, writ ref'd n.r.e.).

I would hold that by virtue of his doctor-patient relationship in which Dr. Kremer undertook the care and treatment of Broadus for the cocaine ingestion, Dr. Kremer assumed a duty to warn Broadus not to drive for a reasonable period of time after the onset of chest pains.

In *El Chico,* where the supreme court imposed liability on a tavern owner for injury to a third party caused by a person who became inebriated at the tavern, the court said:

---

**4.** *See generally,* Robert A. Brazener, Annotation, *Physician's Liability for Injury or Death Resulting from Side Effects of Drugs Intentionally Administered to or Prescribed for Patient,* 45 A.L.R.3d 928 (1972); J.R. Kemper, Annotation, *Malpractice: Doctor's Liability for Mistakenly Administering Drugs,* 23 A.L.R.3d 1334 (1969).

Injury to a third person is no longer unforeseeable in an age when death and destruction occasioned by drunk driving is so tragically frequent.

*El Chico,* 732 S.W.2d at 310. In a recent discussion of the *El Chico* case, the supreme court said:

Given the common knowledge of the effects of alcohol and the direct nature of the defendant's activity, it could be said with certainty that injuries resulting from such activity were foreseeable.

*Greater Houston Transp. Co. v. Phillips,* 801 S.W.2d 523, 526 (Tex.1990).

Given the special knowledge by Dr. Kremer of the delayed reaction to cocaine and the direct nature of the defendant's activities, it could be said with equal certainty that injuries resulting from such activity were equally foreseeable.

The rule has long been recognized in Texas that one who voluntarily undertakes an affirmative course of action for the benefit of another has a duty to exercise reasonable care that the other person will not be injured. *Colonial Sav. Ass'n v. Taylor,* 544 S.W.2d 116, 119 (Tex.1976). The rule, stated in the Restatement (Second) of Torts § 324A, is as follows:

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

(a) his failure to exercise reasonable care increases the risk of such harm, or

(b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

In *C & H Nationwide, Inc. v. Thompson,* 810 S.W.2d 259, 262 (Tex.App.—Houston [1st Dist.] 1991, writ granted), this Court relied on section 324A of the Restatement in holding that Ecotech, a company paid to load pipe for Shell, had a duty to a person killed in an accident when the pipe fell off the truck. We said it was foreseeable by Ecotech that if the pipe was not safely secured, the pipe might come off the trailer in transit and injure another motorist. *Id.* at 267.

In *Doe v. SmithKline Beecham Corp.,* 855 S.W.2d 248, 255–56 (Tex.App.—Austin 1993, writ requested), the Austin Court of Appeals dealt with similar problem relating to duty. In that case, Doe sued SmithKline for negligence in operation of its drug-testing laboratory. When Doe applied for a job with Quaker, she was required to submit to a test for drugs. The result was positive and she was not employed. The issue in the summary judgment case was whether SmithKline owed a duty to Doe and whether she could sue them for negligence in performing the tests. The Austin Court of Appeals said she could, even though she did not have a relationship with them, and their only connection was through Quaker.

We can make an analogy between these two cases. In *SmithKline,* SmithKline had a contract with Quaker and no relationship with Doe; its negligence was in the performance of its agreement with Quaker; by negligently performing its agreement with Quaker, it injured Doe; and the court found SmithKline could be liable to Doe. Here, Dr. Kremer had a patient-doctor relation with Broadus and no relationship with the plaintiff; his negligence was in the treatment of Broadus; and by negligently performing his doctor-patient duties, he injured the plaintiff. If *SmithKline* is a correct analysis of duty, and if the analogy with this case is sound, we should, like the Austin Court, hold the doctor may be liable for the plaintiff's injuries.

I would hold that it was foreseeable by Dr. Kremer that if he did not warn his patient not to drive, the patient could have a delayed reaction to cocaine while driving home, and cause an accident which would injure another person.

I would sustain point of error two.