Stan PRAESEL and Louise
Herbert, Appellants,

v.

Raymond JOHNSON, M.D., Stephen P. Waller, M.D., Sadler Clinic Association, and Hans Wendenburg, M.D., Appellees.

No. 13–93–581–CV.

Court of Appeals of Texas,
Corpus Christi.

Feb. 1, 1996.

Rehearing Overruled June 6, 1996.

Rehearing Overruled July 11, 1996.

**256**

John "Lee" Arellano, Houston, for appellants.

M. Karinne McCullough, Giessel, Barker & Lyman, Houston, John D. Ellis, Jr., Houston, Tina VanDalsem Snelling, Marilyn Kulifay, Hirsch, Robinson, Sheiness & Glover, Houston, for appellees.

Before FEDERICO G. HINOJOSA, Jr., CHAVEZ and SAM BASS,[1] JJ.

## OPINION

FEDERICO G. HINOJOSA, Jr., Justice.

This is an appeal from take-nothing summary judgments in a lawsuit asserting a survival action and wrongful-death claims. Appellants, Stan Praesel and Louise Herbert,

sued appellees, Raymond Johnson, M.D., Stephen P. Waller, M.D., Hans Wendenburg, M.D., and the Sadler Clinic Association, after Terri Lynn Praesel was killed in a traffic accident. The accident occurred when Ronald Peterson, an epileptic, lost control of his car after suffering a grand mal seizure while driving on a public highway. Each of the appellees was engaged in some aspect of Peterson's medical treatment. Appellants alleged that appellees had negligently failed 1) to warn Peterson not to drive, 2) to report Peterson's condition to the Texas Medical Advisory Board, and 3) to protect the driving public from Peterson's condition.

The appellees each moved for summary judgment on the ground that they breached no duty imposed by Texas law. The trial court granted a take-nothing summary judgment in favor of each appellee.

By their first point of error, appellants contend that the trial court erred in concluding that physicians owe the public no duty to warn epileptic patients not to drive. By their second point of error, appellants complain that the trial court dismissed the entire case without addressing their claim that Peterson's medical treatment "was below the reasonable medical standard of care for epileptics."

The accident occurred on February 4, 1991, and Terri Lynn Praesel died on that day. As summary judgment evidence, Johnson, Waller, and the Sadler Clinic attached affidavits stating that Peterson last reported seizure activity to them in 1986. These affidavits establish that Johnson, Waller, and the Sadler Clinic had no knowledge that Peterson suffered any seizures during the four-year period preceding the collision made the basis of this suit. Appellants did not controvert this evidence.

■ In his motion for summary judgment, Wendenburg admitted that Peterson had informed him of a seizure that occurred ten months before the traffic accident. However, Wendenburg testified by affidavit and deposition that he specifically warned Peterson not to drive. Appellants controverted

1. Justice Sam Bass, assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to Tex. Gov't Code Ann. § 74.003 (Vernon 1988).

Wendenburg's affidavit and deposition testimony with affidavits from Peterson and his wife. That fact issue is immaterial to this appeal, however, because Wendenburg moved for summary judgment on the sole ground that he owed appellants no duty to warn Peterson not to drive. The existence of a duty is a threshold question that may preempt the need to determine whether the standard of care was breached. *See St. John v. Pope,* 901 S.W.2d 420, 424 (Tex.1995). Because the summary judgments involved in this case were based solely on the absence of a legal duty, the issue of whether Wendenburg warned Peterson not to drive is not properly under consideration.

By their first point of error, appellants contend that the trial court erred in concluding that physicians owe the public no duty to warn epileptic patients not to drive. Appellants argue that physicians owe the driving public a duty to warn epileptic patients not to drive.

■ Whether appellees owed a duty to appellants to warn Peterson not to drive is a question of law. *See SmithKline Beecham Corp. v. Doe,* 903 S.W.2d 347, 351 (Tex.1995). Appellants, relying chiefly on *Gooden v. Tips,* 651 S.W.2d 364 (Tex.App.—Tyler 1983, no writ), argue that Texas law recognizes a physician's duty to warn certain patients not to drive.

The *Gooden* case arose from a traffic accident caused when one of Dr. Tips' patients lost control of her car while driving under the influence of Quaaludes that Dr. Tips had prescribed. Gooden alleged that Dr. Tips was aware that his patient had a long history of abusing drugs and could not be expected to take her medication as prescribed. Gooden also asserted that Dr. Tips deviated from the customary standards of medical care by prescribing Quaaludes and by failing to warn his patient not to drive while under the drug's influence. *Id.* at 365. Based on the undisputed lack of a doctor-patient relationship between Gooden and Dr. Tips, the trial court granted summary judgment in favor of Dr. Tips. *Id.* at 366.

Reversing the trial court's summary judgment, the *Gooden* court held that "under proper facts, a physician can owe a duty to use reasonable care to protect the driving public where the physician's negligence in diagnosis or treatment of his patient contributes to plaintiff's injuries." *Id.* at 369. The court concluded that Gooden's petition alleged facts that might support a determination that Dr. Tips' was guilty of " 'misfeasance' as opposed to 'nonfesance.' " *Id.* at 370 n. 3. Accordingly, the basis for any liability to the driving public under *Gooden* must involve the defendant doctor's "misfeasance" rather than "merely failing to confer a benefit upon" the driving public. *Id.* (quoting Prosser, *Handbook of the Law of Torts,* § 56, at 339–40 (4th ed. 1971)).

This duty was further discussed in *Flynn v. Houston Emergicare, Inc.,* 869 S.W.2d 403 (Tex.App.—Houston [1st Dist.] 1993, writ denied). The *Flynn* case arose from a traffic accident involving a patient who was driving home from treatment at an Emergicare clinic. *Id.* at 404. The patient in *Flynn* drove himself to the clinic, where he sought treatment for chest pains. After determining that the patient's complaints were the result of cocaine use, the Emergicare doctor prescribed medication to slow the patient's heart rate and lower his blood pressure. The Emergicare doctor then released the patient without warning him not to drive. *Id.*

Flynn asserted that Emergicare had negligently failed 1) to fully diagnose and monitor the patient's condition, 2) to admit the patient to a hospital for observation and then assure his safe return from the hospital, and 3) to warn the patient not to drive. *Id.* at 404–05. Flynn supported these allegations of negligence with the affidavit of a doctor who stated that he would have warned the patient not to drive. Flynn did not, however, assert that the administration of any drug or other affirmative act by the Emergicare doctor created the impairment that resulted in the traffic accident. *Id.* at 405.

The *Flynn* court discussed the earlier *Gooden* case in its opinion. The *Flynn* court focused on the aspect of the *Gooden* decision, characterizing Gooden's allegation against Dr. Tips as a claim of misfeasance rather than nonfeasance. *Flynn,* 869 S.W.2d at 405–06. Based on that distinction, the *Flynn*

court concluded that the Emergicare doctor was guilty only of nonfeasance because the doctor did not create the cocaine impairment that resulted in the accident. Consequently, the *Flynn* court held that Emergicare owed the public no duty to warn its patient not to drive following the patient's use of cocaine. *Id.* at 406.

■ Under *Gooden* and *Flynn*, a physician only has a duty to the public to warn his patients not to drive when it is the doctor's actions that have threatened the public's interest. This duty does not require a physician to warn his patient not to drive when the doctor's actions have merely failed to confer a beneficial safeguard that might have protected the driving public.

In the instant case, appellants do not allege that appellees created Peterson's epilepsy or caused the seizure that resulted in the traffic accident which killed Mrs. Praesel. Instead, appellants complain that appellees' nonfeasance caused Mrs. Praesel's death. Our research has shown that neither *Gooden* nor *Flynn* nor any other Texas authority has imposed such a duty on physicians. Whether this court should be the first in Texas to recognize such a duty requires consideration of several "factors, including the risk, foreseeability, and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant." *Greater Houston Transp. Co. v. Phillips,* 801 S.W.2d 523, 525 (Tex.1990). We may also take into account the law of other states. *SmithKline Beecham,* 903 S.W.2d at 351.

Appellants cite us to the Iowa case of *Freese v. Lemmon,* 210 N.W.2d 576 (Iowa 1973), which recognizes that the public is the beneficiary of a physician's duty to warn epileptic patients not to drive. Like the instant case, the *Freese* suit was based on an allegation that the plaintiffs' injuries were caused when a driver suffered a seizure and lost control of his car. The Freeses sued the driver and the driver's doctor. In their pleading, the Freeses alleged that the driver consulted the doctor for diagnosis and treatment of seizures less than three months before the driver had the seizure that caused the Freeses' injuries. *Id.* at 578. The Freeses alleged that the doctor was negligent 1) in his diagnosis and treatment of the driver and 2) in advising the driver that he could drive or in failing to warn the driver not to drive. *Id.* Under these circumstances, the Iowa Supreme Court held that the Freeses had not failed "to state a claim on which any relief may be granted under any state of facts which could be proved." *Id.* at 580.

■ The facts underlying appellants' claim against Johnson, Waller, and the Sadler Clinic are substantially different from the facts presented to the Iowa Supreme Court in *Freese.* In *Freese,* the driver told his doctor about a seizure that occurred less than three months before the seizure that resulted in that suit. In our case, however, Peterson did not tell Johnson, Waller, or the Sadler Clinic about his most recent seizure, which occurred less than a year before the seizure that resulted in his traffic accident with Mrs. Praesel. Consequently, Johnson, Waller, and the Sadler Clinic had no reason to know that Peterson suffered any seizures during the four-year period immediately before the seizure that led to this suit.

The foreseeability of injury from a traffic accident caused by a seizure is significantly reduced when the physician has no reason to know that his patient suffered a seizure in the preceding four years. *Cf.* 37 TEX.AD-MIN.CODE § 15.58(1)(F) (West 1995) (Department of Public Safety refers drivers license applicants suffering from epilepsy to Texas Medical Advisory Board only if applicant has had seizure within past three years). This reduced foreseeability militates against burdening Johnson, Waller, or the Sadler Clinic with a previously unrecognized duty to protect the driving public. Accordingly, we overrule appellants' first point of error as it applies to Johnson, Waller, or the Sadler Clinic.

■ We do not reach the same conclusion, however, when considering appellants' claims against Wendenburg. Wendenburg testified that he always told his patients to report their seizure activity to him, and that it was his practice to warn them not to drive. Wen-

denburg also stated that if a patient "should be driving and have a seizure, he could have an accident in which he could hurt or kill himself." Wendenburg further explained, "It's possible that he could hurt or kill somebody else, and I always follow that up by telling a patient, 'And if I am the one you kill, I'm going to be mad as hell.'" Finally, Wendenburg stated that his medical education and training were like any other doctor's in that he was taught that he should always warn a patient not to drive when the patient reported a seizure.

■ This testimony establishes the foreseeable nature of the risk of injury from a doctor's failure to warn an epileptic patient not to drive unless his or her seizures are under control. Although foreseeability alone is insufficient to create a new legal duty, *Boyles v. Kerr*, 855 S.W.2d 593, 599 (Tex. 1993), foreseeability of the risk is the "foremost and dominant" factor. *El Chico Corp. v. Poole*, 732 S.W.2d 306, 311 (Tex.1987).

The Texas Supreme Court recently discussed how the countervailing factors should be weighed against a foreseeable risk of injury in the case of *Bird v. W.C.W.*, 868 S.W.2d 767 (Tex.1994). In *Bird*, the supreme court considered whether it should recognize a duty running from a psychologist to a third party to not negligently misdiagnose a patient's condition. As in the claim against Wendenburg, the foreseeability in *Bird* was accepted as well established by the summary judgment evidence. *Id.* at 769. Yet the supreme court nevertheless held that a third-party plaintiff could not sue for negligent misdiagnosis when a sexual assault was falsely imputed to him because of a psychologist's misdiagnosis. *Id.* at 768.

The *Bird* court concluded that the following factors outweighed the foreseeable risk of injury: 1) the utility of eradicating sexual abuse, 2) the extent to which the psychologist must rely on information provided by the patient, often a child, 3) the availability of other sanctions against a person reporting false information in a custody proceeding, and 4) the inexact nature of the science involved and the necessity that psychologists freely exercise their professional judgment in diagnosing sexual abuse. *Id.* at 769. More-

over, the *Bird* court specifically contrasted the duty at issue in that case against the duty to warn recognized in the *Gooden* case:

> There is little social utility in failing to warn patients about known side-effects of a drug, but there is great social utility in encouraging mental health professionals to assist in the examination and diagnosis of sexual abuse.

*Id.* at 770.

We believe that the putative duty underlying appellants' claim against Wendenburg is more like the duty recognized in *Gooden* than the duty rejected in *Bird*. There is little social utility in a doctor's failure to warn certain patients suffering from uncontrolled epilepsy that they should not drive. The magnitude of the burden inherent in requiring doctors to warn such epileptic patients not to drive is minimal when it is based on the patient's disclosure of a recent seizure. And, finally, a doctor's free exercise of professional judgment is not infringed by imposing a duty to warn his epileptic patients to avoid driving until their seizures are under control.

Wendenburg raises one additional consideration relevant to the imposition of a duty to warn. Wendenburg asserts that Peterson consulted him for treatment of pain in his neck and left arm and for no other reason. According to Wendenburg's affidavit, Johnson and Waller were the doctors who treated Peterson's seizures. Although these assertions were not contested, the summary judgment evidence also shows that Wendenburg was the only doctor to whom Peterson reported his renewed seizure activity. Further evidence shows that Wendenburg was the doctor who renewed Peterson's prescription for anti-seizure medicine just seven months before the collision that resulted in this suit. In his brief, Wendenburg explains that he filled this prescription to save Peterson the expense of having to visit the physicians who were treating his seizures.

The existence of a duty is a question of law that must be determined in relation to the surrounding facts. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex.1995). Because this is a summary judgment case in

which Wendenburg was the movant, we must resolve any doubts and indulge every reasonable inference in favor of appellants. *See Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 549 (Tex.1985). Under this standard of review, Wendenburg has failed to prove as a matter of law that the nature of his treatment of Peterson was so unrelated to epilepsy as to negate any conceivable duty to warn. Accordingly, we sustain appellants' first point of error as it relates to Wendenburg.

■ We now address appellants' second point of error as it relates to the summary judgments granted by the trial court in favor of Johnson, Waller, and the Sadler Clinic. Under this point, appellants complain that the trial court failed to address their claim that Peterson's medical treatment "was below the reasonable medical standard of care for epileptics." Appellants did not raise this claim in the trial court, but their petition included a claim that appellees "failed to take proper action to protect the driving public from the condition that afflicted their patient."

■ On appeal, we cannot consider a claim that was not presented to the trial court. *See SmithKline Beecham,* 903 S.W.2d at 355. Accordingly, we cannot consider the claim based on "the reasonable medical standard of care" unless that claim can be inferred from appellees' alleged failure to protect the driving public. This link between the claim based on the doctor's duty to use reasonable care and the claim based on a failure to protect the public may be traced back to the following language from *Gooden:*

> under proper facts, a physician can owe a duty to use reasonable care to protect the driving public where the physician's negligence in diagnosis or treatment of his patient contributes to plaintiff's injuries.

*Gooden,* 651 S.W.2d at 369; *cf. St. John,* 901 S.W.2d at 423 (the lack of a doctor-patient relationship would preclude appellants' claims, however, to the extent that this claim may be read as a health care liability claim).

If appellants' "reasonable medical standard of care" claim can be inferred from their claim based on a doctor's duty under *Gooden,*

we addressed that claim under appellants' first point of error. If the "reasonable medical standard of care" claim cannot be inferred from the appellees' alleged failure to protect the driving public, appellants did not present their claim to the trial court. In either event, we must overrule appellants' second point of error.

We AFFIRM the trial court's summary judgments granted in favor of Johnson, Waller, and the Sadler Clinic. We REVERSE the summary judgment granted in favor of Wendenburg and REMAND that case to the trial court for further proceedings.

SAM BASS, Justice (Assigned), dissenting.

I would affirm the judgment of the trial court with regard to all of the appellees.

The majority concedes that neither *Gooden,* nor *Flynn,* nor any other Texas case has extended a physician's duty to the general public to warn his patients not to drive, unless the physician's own actions have caused the dangerous condition exhibited by his patient. I find no evidence in the present proceeding which shows that any of the appellees did any act that caused Peterson's epileptic condition or seizure, or contributed to the injuries suffered by Terri Lynn Praesel, or to the damages suffered by Stan Praesel and/or Louise Herbert.

Moreover, Dr. Wendenburg, whom the majority would send back for trial, was never consulted on the treatment of epilepsy, but rather was informed that this illness was being treated by other physicians. Dr. Wendenburg treated Peterson solely by surgery for injuries to his spine as a result of an injury sustained when he was rear-ended in an automobile accident. Dr. Wendenburg had no duty to Peterson concerning the treatment of epilepsy since he was never consulted or employed for the care or treatment of this illness.

Accordingly, I would overrule all of appellants' points of error and affirm the judgment of the trial court.