Stan **PRAESEL** and Louise Herbert, Petitioners,

v.

Raymond **JOHNSON**, M.D., et al., Respondents.

No. 96–0584.

Supreme Court of Texas.

Argued Nov. 5, 1997.

Decided April 14, 1998.

Rehearing Overruled June 23, 1998.

John "Lee" Arellano, Patrice M. Barron, Houston, for Petitioners.

Karinne McCullough, Marilyn Kulifay, Tina V. Snelling, Houston, for Respondents.

OWEN, Justice, delivered the opinion of the Court, in which PHILLIPS, Chief Justice, GONZALEZ, HECHT, SPECTOR, BAKER, ABBOTT, and HANKINSON, Justices, join.

We must decide in this case whether a physician owes a duty to third parties to warn an epileptic patient not to drive or to report the patient's condition to state authorities that govern the issuance of drivers' licenses. We conclude that we should not impose a duty that is owed to third parties and accordingly reverse the judgment of the court of appeals in part and render judgment that the plaintiffs take nothing.

## I

Ronald Peterson, an epileptic, suffered a grand mal seizure while driving and broadsided a vehicle driven by Terri Lynn Praesel, who died from the injuries she sustained. Her husband and mother, Stan Praesel and Louise Herbert, brought this suit against three physicians who had treated Peterson, Drs. Raymond Johnson, Jr., Stephen Waller, and Hans Wendenburg, and against the Sadler Clinic and Doctor's Hospital where Peterson had been treated prior to the collision.

Dr. Johnson is board-certified in Family Practice and first saw Peterson approximately seven years before the accident that resulted in Terri Lynn Praesel's death. Peterson's medical history indicated that he had suffered from epileptic seizures since the age of nine but that for an extended length of time before his first consultation with Dr. Johnson, his seizures had been controlled with Dilantin and Phenobarbital. Johnson periodically checked the levels of medication in Peterson's bloodstream, which were within therapeutic ranges on each occasion, and Peterson experienced no seizure activity until May and June of 1986, approximately four and one-half years before the accident. Dr. Johnson admitted Peterson to a hospital at that time because of seizures and referred him to a neurologist, Dr. Stephen Waller. Dr. Johnson thereafter treated Peterson for a number of ailments and complaints, most of which were unrelated to epilepsy, and did not prescribe anticonvulsant medication for him. That was done by the two other physicians who are defendants in this case. However, Johnson did continue to monitor the Dilantin levels in Peterson's bloodstream.

Seven days before the collision with Praesel, Peterson saw Dr. Johnson and complained of flu-like symptoms. Johnson prescribed medication for that condition and again checked the serum level of Dilantin to ensure that it was within the therapeutic range. Dr. Johnson's records contain no indication that Peterson had experienced any seizures from June 1986 until the collision with Terri Lynn Praesel in 1991, and it is conceded that Dr. Johnson was not advised of any seizures after June 1986. However, Peterson had reported to another physician, Dr. Wendenburg, that he had a seizure in April 1990, ten months before the accident. Peterson did not volunteer that information to Dr. Johnson. One of the allegations of negligence in this case is that during the

January 1991 consultation, Johnson failed to inquire of Peterson if there had been any seizures since his last visit.

Dr. Waller, the neurologist who was called in by Dr. Johnson when Peterson was hospitalized in 1986, treated Peterson's epilepsy until approximately one year before the collision. The hospital records indicate that in 1986, Dr. Waller instructed Peterson not to drive, although Peterson disputes that he was ever warned not to drive by any of the defendants in this case. By October 1989, Peterson had been seizure-free for over three years, and Dr. Waller asserts that he told Peterson there was "no reason either medically or legally why he [Peterson] should not be driving."

Dr. Waller prescribed Dilantin and Phenobarbital during the three years that he treated Peterson and was satisfied that the medication was taken as directed. Waller last saw Peterson in 1989, and last rendered medical services to Peterson in March 1990 when he authorized a refill of a prescription for Phenobarbital. Waller did not learn about the following month's seizure until after Terri Lynn Praesel's death.

Peterson began seeing a third physician, Dr. Wendenburg, approximately one year before the collision. Wendenburg, a neurosurgeon, treated Peterson for pain in his neck, shoulders and arm, and performed surgery to repair a ruptured disc. During the course of this treatment, Wendenburg ordered a myelogram, and Peterson suffered a seizure several days after the procedure. This was the April 1990 seizure that occurred ten months before the collision. Wendenburg contends that upon learning of the episode, he warned Peterson not to drive and advised him to confer with the physicians treating him for epilepsy. Peterson denies that any warning was given. Although Wendenburg primarily treated Peterson for problems unrelated to epilepsy, Wendenburg prescribed Phenobarbital and Dilantin for Peterson seven months before the collision.

Stan Praesel and Louise Herbert allege that each of the physicians was negligent in failing to warn Peterson that he should not drive, in failing to inquire of Peterson whether he had experienced seizures, and in failing to contact the state Medical Advisory Board regarding Peterson's condition pursuant to former Texas Revised Civil Statute article 6687b.[1] The trial court granted summary judgments for the three physicians and the Sadler Clinic on all claims, holding that, as a matter of law, the physicians owed no duty to third parties. The plaintiffs nonsuited their claims against Doctor's Hospital and appealed the trial court's adverse determinations.

The court of appeals affirmed the summary judgments with respect to Johnson, Waller, and the Sadler Clinic, but reversed the summary judgment in favor of Wendenburg, with one justice dissenting. 925 S.W.2d 255. The court of appeals reasoned that the foreseeability of a traffic accident was significantly reduced if an epileptic patient had not experienced a seizure for more than three years. *Id.* at 258. The court concluded that neither Johnson nor Waller had reason to know that Peterson had suffered a seizure at any time during the three years before the collision with Terri Lynn Praesel. Accordingly, the court of appeals declined to impose a duty to third parties on Johnson, Waller or the Sadler Clinic. The court held, however, that Wendenburg had a duty because he had been informed of the 1990 seizure and had undertaken to treat Peterson for epilepsy by renewing prescriptions for anticonvulsant medication. *Id.* at 259–60. All parties filed applications for writ of error in this Court.

For the reasons we consider below, we agree with the court of appeals that Johnson, Waller and the Sadler Clinic owed no duty to third parties. However, the court of appeals erred in concluding that Wendenburg owed a duty to third parties to warn Peterson not to drive. We further hold that physicians do not owe a duty to third parties to report an epileptic's condition to state authorities that issue drivers' licenses.

1. *See* Act of April 14, 1941, 47th Leg., R.S., Ch. 173, 1941 Tex. Gen. Laws. 245, *amended by* Act of May 23, 1985, 69th Leg., R.S., Ch. 819, § 1, 1985 Tex. Gen. Laws 2875, 2876, *amended by* Act of May 1, 1989, 71st Leg., R.S., Ch. 95, § 1, 1989 Tex. Gen. Laws 422, *recodified by* Act of May 1, 1995, 74th Leg., R.S., Ch. 165, §§ 9, 24(a), 1995 Tex. Gen. Laws 1834, 1870, 1871.

## II

Under the common law, a cause of action for negligence has three elements: 1) a legal duty; 2) a breach of that duty; and 3) damages proximately resulting from the breach. *See Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex.1990). The threshold question in this case is the existence of a duty, which is a question of law for the court. *Id.* The statutes and regulations that govern drivers who suffer from conditions such as epilepsy inform our decision regarding both a duty to warn a patient and a duty to report, and we first examine those enactments.

We have on at least one occasion looked to enactments by the Legislature to determine if a civil tort duty should be imposed. *Nixon v. Mr. Property Management* Co., 690 S.W.2d 546, 549 (Tex.1985) (holding that a duty was owed to a rape victim based on a city ordinance that required property owners to secure the doors and windows of a vacant structure to prevent unauthorized entry). However, in most cases when we consider whether to utilize a statute for purposes of tort liability, a duty already exists under the common law, and we look to statutes to establish the specific standard of care. *See generally Parrott v. Garcia*, 436 S.W.2d 897, 899 (Tex.1969).

The Legislature has established a Medical Advisory Board to "assist the Department of Public Safety of the State of Texas in determining whether . . . an applicant for a driver's license or a license holder is capable of safely operating a motor vehicle." TEX. HEALTH & SAFETY CODE § 12.092(b). The rules of the Department of Public Safety

provide that persons "holding a Texas drivers license and having a physical or mental condition, the extent of which cannot be determined by the department," are referred by the Department to the Medical Advisory Board for further evaluation. 37 TEX. ADMIN. CODE § 15.58. The Department's rules contain guidelines for referral that include epileptic seizures:

> (F) Neurological disorders. All applicants who have had an epileptic seizure within the past three years or are under the care of a physician for any other seizure, dizzy spell, or similar disorder.

*Id.* § 15.58(1)(F). The term "under the care of a physician" is defined as

> having been referred to for treatment or having received treatment from a physician for the medical condition or conditions indicated in the past 12 months without a release from further treatment. This does not apply to a condition(s) diagnosed over 12 months ago and treatment consisting of only periodic visits for check up and maintenance.

*Id.* § 15.58(4)(A). These same regulations were in effect at the time Peterson's car collided with Praesel's.

Treating physicians are permitted by statute, but are not required, to inform the Department of Public Safety or the Medical Advisory Board of the name, date of birth, and address of a patient "whom the physician has diagnosed as having a disorder specified in a rule of the Department," which would include patients with epilepsy. TEX. HEALTH & SAFETY CODE § 12.096(a)[2]; 37 TEX. ADMIN. CODE § 15.58(1). A report of information by

---

**2.** At the time of the collision, former Texas Revised Civil Statute article 6687b(21A)(d)(3) was in effect, which provided:

> A physician who is licensed to practice medicine in Texas may voluntarily inform the department [of Public Safety] or the board, orally or in writing, of the full name, date of birth, and address of a patient over the age of 15 years whom he or she has diagnosed as having a disorder or disability specified in the rules of the department. The release of such information by the physician to the board is an exception to the patient-physician privilege requirements of Section 5.08 of the Medical Practice Act (Article 4495b, Vernon's Texas Civil Statutes).

Act of April 14, 1941, 47th Leg., R.S., Ch. 173, 1941 Tex. Gen. Laws. 245, *amended by* Act of May 23, 1985, 69th Leg., R.S., Ch. 819, § 1, 1985 Tex. Gen. Laws 2875, 2876, *amended by* Act of May 1, 1989, 71st Leg., R.S., Ch. 95, § 1, 1989 Tex. Gen. Laws 422, *recodified by* Act of May 1, 1995, 74th Leg., R.S., Ch. 165, §§ 9, 24(a), 1995 Tex. Gen. Laws 1834, 1870, 1871.

It has since been codified in § 12.096 of the Health and Safety Code without any substantive change pertinent to our consideration here. For ease of reference, we refer to the current statutes.

a physician under this provision is an exception to the patient-physician privilege imposed by TEX.REV.CIV. STAT. ANN. art. 4495b (Vernon Supp.1998). *See* TEX. HEALTH & SAFETY CODE § 12.096(b).

A patient's license is not automatically revoked when a physician does report information. If the Department requests an opinion from the Medical Advisory Committee, a three-person panel is convened, and each panel member is required to prepare "an individual independent written report" stating the member's "opinion as to ability of the ... license holder to operate a motor vehicle safely." TEX. HEALTH & SAFETY CODE § 12.095. The panel may require the license holder to undergo a medical examination. *Id.*

In those instances in which we have determined that it would be appropriate to base civil liability on a statute, the standard of conduct has been clearly defined, and the injury at issue grew directly out of a breach of that standard. *See Carter v. William Sommerville and Son, Inc.,* 584 S.W.2d 274, 278 (Tex.1979); *Parrott,* 436 S.W.2d at 900. For example, we have held that it is negligence per se, absent a valid excuse, to drive on the wrong side of the road, fail to stop at a railroad crossing when a train is approaching, drag race, attempt to pass a vehicle when nearing an intersection, and knowingly permit an unlicenced driver to drive a car. See *Carter,* 584 S.W.2d at 278 and cases cited therein.

Many of the statutes that this Court has utilized to establish a standard of conduct for civil tort liability have been criminal laws. *See generally Parrott,* 436 S.W.2d at 900; *Rudes v. Gottschalk,* 159 Tex. 552, 324 S.W.2d 201, 204–05 (1959). However, we have long recognized that the "mere fact that the Legislature adopts a criminal statute does not mean this court must accept it as a standard for civil liability." *Carter,* 584 S.W.2d at 278; *see also Rudes,* 324 S.W.2d at 204–05 (observing that fundamentally, the application of proscriptions contained in criminal statutes as standards for determining tort liability stems from the judicial action of civil courts and that the power of adopting or rejecting standards rests with the civil courts). We can borrow all, part, or none of a criminal statute as we deem appropriate for establishing a duty under the civil law. *See Rudes,* 324 S.W.2d at 205.

We have looked at the purpose of the statute and at whether it was enacted to protect the class of persons to which the injured party belongs " 'against the hazard involved in the particular case.' " *Parrott,* 436 S.W.2d at 899 (quoting *East Tex. Motor Freight Lines v. Loftis,* 148 Tex. 242, 223 S.W.2d 613, 615 (1949)); *see also Carter,* 584 S.W.2d at 278. The general public is within the class of persons to be protected from drivers who may be impaired. But that does not end our inquiry.

Another element this Court has generally required before imposing civil liability for breach of a statutory standard of conduct is that the " 'alleged conduct ... would be considered substandard even in the absence of statute.' " *Parrott,* 436 S.W.2d at 899 (quoting *Rudes,* 324 S.W.2d at 204). It would not be substandard conduct even in the absence of the statute for a physician to fail to report in every instance that a patient suffered from epilepsy. As the court of appeals concluded and the Department of Public Safety's regulations implicitly recognize, the risk that a patient who has been seizure-free for three years will have a seizure while driving is remote. *See* 925 S.W.2d at 258; 37 TEX. ADMIN. CODE § 15.58(1)(F).

An additional consideration in determining whether a duty should be recognized based on a statute is whether compliance with the statute would directly protect the class of persons to which the injured party belongs. A report to the Medical Advisory Board by a treating physician does not translate into automatic revocation of the patient's license. The Board can recommend that a driver be permitted to retain a license even if there has been a seizure within three years. *See* 37 TEX. ADMIN. CODE § 15.58(F) (setting out guidelines for referral to the Board); TEX. HEALTH & SAFETY CODE § 12.095 (providing that each member of a three-person panel must give their independent opinion of whether a license holder is able to operate a vehicle safely).

Section 12.096 is unlike other enactments that have led us to impose negligence per se for unexcused violations. As we have seen, there is no specific or even general conduct by a physician that is mandated or prohibited under the optional reporting provisions of TEX. HEALTH & SAFETY CODE § 12.096. The injury in this case did not result from statutorily prescribed or proscribed conduct. This too weighs against utilizing TEX. HEALTH & SAFETY CODE § 12.096 as the source of a civil tort duty. The civil courts have

"adopt[ed] the statutory test rather than that of the ordinarily prudent man as the more accurate one to determine negligence because the Legislature, by reason of its organization and investigating processes, is generally in a better position to establish such tests than are the judicial tribunals."

*Parrott,* 436 S.W.2d at 899–900 (quoting *Rudes,* 324 S.W.2d at 204). If we were to impose negligence "per se" for a failure to report, a physician could be subjected to broad and wide-ranging civil liability for breaching an ill-defined duty. *See generally Carter,* 584 S.W.2d at 279 (declining to apply statute that prohibited aiding and abetting one who violates the Motor Carrier Act, concluding that it would impose "broad and wide-ranging liability").

We conclude that section 12.096 of the Texas Health and Safety Code provides no sound basis for imposing negligence per se for failing to report an epileptic seizure to state licensing authorities. We next consider whether, separate and apart from the statute, we should create a common-law duty to third parties to warn a patient not to drive.

### III

This Court has generally limited the scope of the duty owed by physicians in providing medical care to their patients. Recently, we held in *Edinburg Hospital Authority v. Trevino,* 941 S.W.2d 76, 79 (Tex.1997), that a physician did not owe a duty to a husband "to provide competent medical care to [his wife] or [her] fetus." In that case, the wife arrived at an emergency room in labor, and a physician administered a drug to hasten the birth of the child. This caused severe hemorrhaging, which her husband witnessed, and their child was later stillborn. We declined to permit bystander recovery, citing *O'Hara v. Holy Cross Hosp.,* 137 Ill.2d 332, 148 Ill.Dec. 712, 561 N.E.2d 18, 20 (1990), which limited bystander recovery in medical malpractice cases. *Trevino,* 941 S.W.2d at 81. We held that a hospital has no duty of care to nonpatients. "A physician's primary duty is to the patient, not to the patient's relatives." *Id.*

Similarly, in *Bird v. W.C.W.,* 868 S.W.2d 767, 770 (Tex.1994), we held that a health care professional did not owe a duty to third parties, in part because of the absence of a physician-patient relationship. In *Bird,* a psychologist concluded that a child had been sexually molested by the father, and criminal and civil proceedings were initiated against the father that were later dropped. He sued the psychologist, and we held that "as a matter of law there is no professional duty ... to a third party to not negligently misdiagnose a condition of a patient." *Bird,* 868 S.W.2d at 768. It was foreseeable that a parent accused of sexual abuse would suffer harm. But the Court concluded that there were countervailing considerations, including the eradication of sexual abuse, that weighed in favor of allowing mental health professionals to diagnose sexual abuse of a child without the judicial imposition of a duty and consequent civil tort liability to third parties. *Id.* at 769.

In *Bird,* we cited two decisions of the courts of appeals that had concluded mental health professionals who misdiagnosed sexual abuse did not owe any duty to third parties. *See* 868 S.W.2d at 769–70 (citing *Vineyard v. Kraft,* 828 S.W.2d 248 (Tex.Civ.App.—Houston [14th Dist.] 1992, writ denied); *Dominguez v. Kelly,* 786 S.W.2d 749 (Tex.App.—El Paso 1990, writ denied)). Other courts of appeals have, however, concluded that a physician may owe a duty to third parties in some circumstances. In *Zezulka v. Thapar,* 961 S.W.2d 506 (Tex.App.—Houston [1st Dist.] writ requested), a patient threatened to kill and did kill his stepfather. The court of appeals held that a psychiatrist owes a duty to warn an identifiable person of threats against that person's life. The court followed an often-cited case from the California Supreme Court, *Tarasoff v. Regents of the Uni-*

versity of California, 17 Cal.3d 425, 131 Cal. Rptr. 14, 551 P.2d 334, 345–47 (1976), which was clarified in *Thompson v. County of Alameda*, 27 Cal.3d 741, 167 Cal.Rptr. 70, 614 P.2d 728 (1980) (holding that under *Tarasoff*, a duty was owed only to identifiable victims). Three other Texas courts of appeals have indicated that a mental health professional owes a duty to identifiable third parties whom the patient has threatened to harm but held that because the third parties who had been killed or injured in each of those cases were not specifically identifiable, there was no duty. *Limon v. Gonzaba*, 940 S.W.2d 236 (Tex.App.—San Antonio 1997, writ denied); *Kehler v. Eudaly*, 933 S.W.2d 321 (Tex.App.—Fort Worth 1996, writ denied); *Williams v. Sun Valley Hosp.*, 723 S.W.2d 783 (Tex.App.—El Paso 1987, writ ref'd n.r.e.).

This Court has not yet determined whether mental health practitioners have a duty to an identifiable victim of a patient. We did not reach that issue in *Kerrville State Hospital*, although four dissenting JUSTICES would have imposed a duty. *See Kerrville State Hosp. v. Clark*, 923 S.W.2d 582, 584 (Tex. 1996) (ABBOTT, J., dissenting). We do not decide the question today. We note, however, that the issue of the duty owed by physicians to third parties has arisen in a number of different contexts. *See generally* Scott A. Mager, *Torts: 1995 Survey of Florida Law*, 20 NOVA L.REV. 363, 411 n. 121 (1995); Tracy A. Bateman, Annotation, *Liability of doctor or other health practitioner to third party contracting contagious disease from doctor's patient*, 3 A.L.R.5th 370 (1992); Gregory G. Sarno, Annotation, *Liability of Physician, for Injury to or Death of Third Party, Due to Failure to Disclose Driving–Related Impediment*, 43 A.L.R.4TH 153 (1986); THOMAS R. MALIA, ANNOTATION, *PHYSICIAN'S LIABILITY TO THIRD PERSON FOR PRESCRIBING DRUG TO KNOWN DRUG ADDICT*, 42 A.L.R.4th 586 (1985). The various decisions in this area illuminate the competing considerations that arise in determining if a duty should be recognized under tort law.

The two Texas cases that have considered a physician's duty in the context of facts closer to this case are *Flynn v. Houston Emergicare, Inc.*, 869 S.W.2d 403 (Tex. App.—Houston [1st Dist.] 1994, writ denied), and *Gooden v. Tips*, 651 S.W.2d 364 (Tex. App.—Tyler 1983, no writ). In *Flynn*, a patient had taken cocaine and sought medical attention the next morning. The attending physician failed to warn of an alleged "crash" phenomenon associated with cocaine use and failed to warn the patient not to drive. The patient rear-ended the plaintiff later that day. The court of appeals held that no duty was owed to the plaintiff, reasoning that the physician did not create the impairment that resulted in the injury. *Flynn*, 869 S.W.2d at 405–06.

The court in *Gooden v. Tips* reached a different conclusion. A physician had prescribed Quaalude to a patient with a history of drug abuse but had failed to warn her not to drive. Relying on decisions from other jurisdictions, the court of appeals held that there was a duty owed to third parties. *Gooden*, 651 S.W.2d at 370.

The court of appeals in this case relied on *Gooden* and on *Freese v. Lemmon*, 210 N.W.2d 576 (Iowa 1973), in determining that Peterson's treating physician owed a duty to Terri Lynn Praesel to warn Peterson not to drive. In *Freese*, the Iowa court examined only the pleadings and held that "it cannot be said to a certainty" that the plaintiffs failed to state a cause of action when they alleged that a physician was negligent in not warning a patient that had recently suffered a seizure not to drive. *Id.* at 579.

In deciding whether to impose a common-law duty, this Court has applied the familiar factors identified in *Graff v. Beard*, 858 S.W.2d 918, 920 (Tex.1993), *Greater Houston Transportation Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex.1990), and *Otis Engineering Corp. v. Clark*, 668 S.W.2d 307, 309 (Tex. 1983). The considerations include social, economic, and political questions and their application to the facts at hand. *Graff*, 858 S.W.2d at 920. We have weighed the risk, foreseeability, and likelihood of injury against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant. *Id.* Also among the considerations are whether

one party would generally have superior knowledge of the risk or a right to control the actor who caused the harm. *Id.; see also Golden Spread Council, Inc. # 562 of Boy Scouts of Am. v. Akins,* 926 S.W.2d 287, 289–90 (Tex.1996).

■ All parties and the court of appeals have recognized that none of the physicians had the right or the ability to control the conduct of Peterson. We have observed in other contexts that as a practical matter, it would be very difficult for someone to prevent another from driving in an impaired condition. *See Graff,* 858 S.W.2d at 921. But it does not necessarily follow that there is no duty to give a warning. As we observed in *Bird,* there is little utility in failing to warn patients about effects of a drug or condition that are known to the physician but are likely to be unknown to the patient. *Bird,* 868 S.W.2d at 770. However, patients who are epileptic know that they are subject to seizures. While the knowledge of a physician about epilepsy may be superior to that of a patient from a medical standpoint, the risk that a seizure may occur while driving and the potential consequences should be obvious to those who suffer from epilepsy. Those with neurological disorders such as epilepsy have an obligation under the statutes and regulations of this state to contact the Department of Public Safety so that the Department may determine if driving is permitted. That determination is not left to the discretion of the patient's private physician.

We do not presume, as the concurrence suggests, that those who suffer from epilepsy would be negligent per se if they have a seizure while driving and injure third parties. It is, however, relevant to our inquiry that those suffering from epilepsy have some responsibility under the law to determine whether it is lawful to drive. As just noted, a treating physician does not make that determination. It is made by the Department of Public Safety.

Praesel and Herbert argue that Peterson's responsibility for his own actions should be left to comparative negligence. We do not hold that epileptics' knowledge of their condition, in and of itself, is a bar to the liability of physicians. Rather, the relative knowledge of the risk as between a patient and a physician is another factor to consider in deciding the threshold question of whether a physician owes a duty to third parties to warn a patient.

In determining whether to erect a legal duty to warn, we must also consider the efficacy of that warning in preventing injury to third parties. We cannot simply assume that a person who is advised not to drive will actually respond and refrain from driving. *See Graff,* 858 S.W.2d at 921 (observing that "we cannot assume that guests will respond to a host's attempts, verbal or physical, to prevent the guests from driving" under the influence of alcohol). The consequences of placing a legal duty on physicians to warn may subject them to substantial liability even though their warnings may not be effective to eliminate the risk in many cases. Unfortunately, many patients do not heed the admonitions of their physicians even though the consequences may be life-threatening to the patient or others.

Balancing both the need for and the effectiveness of a warning to a patient who already knows that he or she suffers from seizures against the burden of liability to third parties, we conclude that the benefit of warning an epileptic not to drive is incremental but that the consequences of imposing a duty are great. The responsibility for safe operation of a vehicle should remain primarily with the driver who is capable of ascertaining whether it is lawful to continue to drive once a disorder such as epilepsy has been diagnosed and seizures have occurred. Accordingly, we decline to impose on physicians a duty to third parties to warn an epileptic patient not to drive.

\* \* \* \* \*

For the foregoing reasons, we reverse the judgment of the court of appeals in part and render judgment that the plaintiffs take nothing.

ENOCH, Justice, concurring.

I join parts I and II of the Court's opinion and the Court's judgment in this case. I write separately because I disagree with the

Court's narrow holding and discussion in part III.

At the outset, I am troubled by the Court's conclusion that the doctors owed no duty because "the risk that a seizure may occur while driving and the potential consequences should be obvious to those who suffer from epilepsy." 967 S.W.2d at 398. First, this conclusion is based upon an assumption that is wholly unsupported in the record. This Court does not know what epileptics are supposed to know about whether they should ever drive a car. Second, inherent in the Court's assumption is the premise that epileptics are *per se* negligent if they have a seizure while driving that results in an accident. The Legislature, however, doesn't share this view. As the Court concedes, 967 S.W.2d at 394, epileptics are specifically permitted to drive automobiles in Texas.

This case should not be decided on the basis that epileptics should know not to drive without being told by a doctor. Even if the Court is correct in making this assumption, it is unwarranted on this record and will have unforeseen effects in cases involving other medical conditions.

My greater concern, though, is how the Court anguishes over whether the doctors had a duty to warn. The Court makes it clear that the Praesels do not claim that the doctors should have warned them; rather, they claim the doctors should have warned the patient. In short, the Praesels are bringing a third-party claim for breach of the doctors' duty to the patient. We have rejected these types of claims time and time again. In fact, the Court today cites the seminal cases that hold that a health care professional's duty is to the patient, not to a third party. 967 S.W.2d 398 (citing *Edinburg Hosp. Auth. v. Trevino*, 941 S.W.2d 76, 79 (Tex.1997), and *Bird v. W.C.W.*, 868 S.W.2d 767, 770 (Tex.1994)).

*Edinburg* and *Bird* should dispose of the issue. But the Court engages in an extended discussion about whether these doctors have a duty to warn. So I must point out that the

duty to warn, if there is one, is to warn the third party directly, not the patient. Small wonder then that courts wrestle over whether such a duty exists when the third parties are not known. *See Limon v. Gonzaba*, 940 S.W.2d 236, 240 (Tex.App.—San Antonio 1997, writ denied) ("If the victim is not identifiable, then who is the physician to warn?"); *see also Tarasoff v. Regents of the University of California*, 17 Cal.3d 425, 131 Cal.Rptr. 14, 551 P.2d 334, 335 (1976), explained in *Thompson v. County of Alameda*, 27 Cal.3d 741, 167 Cal.Rptr. 70, 614 P.2d 728, 734 (1980)(holding that, under *Tarasoff*, a duty runs only to "readily identifiable" third parties).

Also, the Court cites *Gooden v. Tips*, 651 S.W.2d 364 (Tex.App.—Tyler 1983, no writ). *Gooden* stands for the proposition that a doctor may be liable to third parties injured by the conduct of a patient when the doctor failed to warn the patient about the effects of a drug that the doctor prescribed. *See id.* at 369–70. When stripped of its duty-to-warn language, *Gooden* simply holds that a physician owes a duty to a third party to not negligently treat a patient. In light of our holdings in *Edinburg* and *Bird, Gooden* cannot be good authority and we should make that clear to the courts of this state.[1]

\* \* \* \* \*

As we have held more than once, a doctor's duty is to the patient, not a third party. I join parts I and II of the Court's opinion and the Court's judgment. Because I cannot join part III of the Court's opinion, I respectfully concur.

[1] I concede we noted *Gooden* in *Bird*, but we neither applied its reasoning nor considered whether it was a correct statement of the law. *Bird*, 868 S.W.2d at 770. On the other hand, I agree with the Court that *Gooden* is very close to the facts of this case. Consequently, I think the Court should not merely cite *Gooden*, but address whether it expresses a correct rule of law.